The GATES RUBBER COMPANY, SALES DIVISION, INCORPORATED, Appellant,

v.

Foy D. WOOD, d/b/a Wood's Tire Company, Appellee.

No. 6658.

Court of Civil Appeals of Texas.

Beaumont.

Jan. 9, 1964.

Pollard & Pollard, Tyler, for appellant.

Barber & Seale, Jasper, for appellee.

McNEILL, Justice.

This suit began as one upon account for tread rubber sold by appellant to appellee. The tread rubber was manufactured by appellant for use in recapping motor vehicle tires. Appellee filed answer and cross-action for damages alleging that at the time the rubber was purchased the seller knew it was to be used by him for recapping tires, that there was an express warranty that it was fit and merchantable for this purpose and, in alternative, there was an implied warranty that it was fit and merchantable for this purpose. Trial was before the court and it resolved itself into a contest over what warranty or warranties were made and what damages, if any, resulted to appellee. Appellant will herein be referred to as "Gates" and appellee as "Wood".

The trial court rendered judgment in behalf of Gates against Wood on the account for $2,855.77, and in favor of Wood against Gates for damages in the sum of $10,573.20, and striking a balance, net judgment was in favor of Wood for $7,717.43.

Gates requested findings of fact and conclusions of law. In response thereto findings were made, but only three (Nos. 4, 5 and 18) are complained of by Gates. These findings are:

"4. Gates expressly warranted the fitness of the tread rubber it sold to Wood, in the form of a service warranty, which in this case was a guarantee that when the tread rubber is applied to a tire, that the tire will give satisfactory service.

"5. The usual implied warranty of fitness or suitability for the buyer's purpose, is made applicable by the facts of this case, to the sale of the tread rubber from Gates to Wood.

"18. This left the recoverable damages actually sustained by Wood because of the defective Gates rubber at $10,573.20."

Gates also complains of the court's conclusions of law 1, 3 and 6:

"1. Gates breached its express and implied warranties of fitness and suitability, when it furnished Wood with defective rubber.

"3. Wood is entitled to be compensated by Gates for his actual damages sustained because of the defective Gates rubber, in the amount of $10,573.20.

"6. Wood is therefore entitled to a net recovery of and from Gates in the amount of $7,717.43."

After the above findings and conclusions were filed Gates requested additional findings of fact to the effect that two express warranties existed: a shelf-life warranty which is an express warranty of fitness, and a service-life warranty which is an express warranty of merchantability of the tires using its tread rubber—and that there were certain conditions attached to each of these warranties in order that they may be effective. These conditions were to the effect that if the rubber did not prove as represented, written notice should promptly be given Gates along with the return of a sample of the tread rubber in question and the front part of the carton in which that particular item of tread rubber was shipped to Wood. In addition it was requested that the court find that Gates " * * * impliedly warranted the fitness of its tread rubber for the buyer's purpose—". The court declined these additional requests.

Was the court in error in declining these additional findings? We have examined the statement of facts and have con-

cluded that he was not. Mr. Cunningham, witness for Gates and its salesman who sold the tread rubber to Wood, testified his company warranted the fitness and suitability of tread rubber when properly applied to tires. Wood testified that when he bought this merchandise the salesman represented to him that the rubber was good and could be used in his recapping procedure; "they told me it was good rubber." Cunningham also testified that his company had the two types of warranties sought to be established in the additional requests. But the question is not what practice the company followed in giving warranties on its tread rubber: the question is what warranty or warranties became a part of the sales contract made between Gates and Wood at the time the rubber was bought. Whether the two warranties described by him were made known to Wood at the time of the rubber purchase is left in doubt. The sale was made in December 1959. Cunningham saw Wood several times after that. The nearest the evidence comes to showing Wood knew of the warranties was Cunningham's testimony: "Q. —Did you inform Mr. Wood of these warranties— A. Yes, sir. Q. —at the time you talked to him about it? A. Yes, sir." S.F. 388, 389. But at which visit did Cunningham inform Wood? Was it the one when the rubber was sold or was it on a later trip when Wood was having trouble with it? In view of the trial court's finding No. 4, there follows an implied finding that Wood was informed of the two warranties, shelf-life and service-life, at a later visit and not when he purchased the goods. Cunningham was also asked whether or not there were any conditions attached to these warranties and he stated in substance the conditions set out in the additional requests. There was no testimony to the effect that at the time the merchandise was purchased these conditions were made known to Wood. An express warranty is a matter of contract. 37–A Tex.Jur. 319. The minds of the contracting parties must meet on the terms of the contract to be bound thereby. The warranties involved in the present case rest wholly in parol. The

burden was upon Gates to prove that its warranties and conditions sought to defeat Wood's cross-action were a part of the sales contract. Davis Motors, Dodge & Plymouth Co. v. Avett, Tex.Civ.App., 294 S.W.2d 882. Mr. Hicks, witness for Gates, testified that the warranties described by the salesman Cunningham were more or less "company policy". Whether he had reference also to the conditions of the warranties was not made clear. As stated above, there was no proof that the conditions were brought home to Wood or that he agreed thereto. Under these circumstances the trial court had the right to find that the conditions of the warranties never became a part of the contract. And whether we adopt the language of the express warranty as used by the trial court or take the language of the shelf-life and service-life warranties contended for by Gates—as applied to the facts of this case—both, in effect, amount to a warranty of fitness for the purpose sold. Williston on Sales, Revised Ed., Vol. 1, Sec. 235, pp. 604–606.

■■■ Gates says that there may not be both an express warranty and an implied warranty of the same kind and as a part of the same contract. An implied warranty "is regarded as an inherent term of the contract, not necessary to be expressed, and having the same force as if stated in terms." Word v. Cavin, 1 Head (Tenn.) 506. It is a warranty inferred or implied from the language of the contract and the facts and circumstances surrounding the parties at the time the contract is made. 37-A Tex.Jur. 336. It would, therefore, be improper to say that the same contract contains both an express warranty and an implied warranty of the same kind or to the same effect. Since the trial court has found that express warranty of fitness and suitability was made, his finding that implied warranty of fitness and suitability is without effect. Gates' complaint that this finding is without support in the evidence is sustained. But the court's judgment finds support in the express warranty or warranties of fitness and suitability. The trial court found

from the testimony that the tread rubber did not measure up to the warranty or warranties made and that Wood thereby sustained damages.

Complaint is made that the trial court's finding with reference to the express warranty is against the great weight and preponderance of the evidence. We have set forth above a summary of the evidence on this question. The complaint is without merit.

The judgment of the trial court is affirmed.