**RALSTON PURINA COMPANY, Appellant,**

v.

**Gorman L. WISEMAN, Appellee.**

**No. 6168.**

Court of Civil Appeals of Texas, El Paso.

May 19, 1971.

Johnson, Hathaway & Jackson, Thomas W. Hathaway, Tyler, for appellant.

Johnson & Dionne, Paul H. Dionne, Fort Stockton, for appellee.

## OPINION

WARD, Justice.

This is an appeal from the order overruling the plea of privilege filed by Ralston Purina Company. Purina is a foreign cor-

poration and for venue purposes, is a resident of Dallas County where its registered agent for service is located. Section 23 is involved on the theory that a part of the cause of action against the Defendant corporation arose in Pecos County. The judgment of the trial Court is reversed and rendered.

The plaintiff alleged he purchased for his commercial egg business, some 10,000 laying pullets through Purina from another Defendant, Emmett L. Graham, who was doing business as Clearspan Farms of Anson, Texas. Originally the pullets had been hatched by a third Defendant, Hy-Line Hatchery, Inc. of Bryan, Texas, and when a day or two old, had been sold to Clearspan Farms. The claims of liability as to the respective Defendants were based on express and implied warranties made by the Defendants to the effect that the pullets were healthy, of extremely good quality which would be outstanding egg producers, were of merchantable quality and further, that each Defendant was negligent in various respects such as failure to inspect and test the pullets prior to their sale, in making reckless and negligent misrepresentations concerning the quality and character of the birds. The Plaintiff encountered a series of misfortunes with the birds after they arrived at his place of business in Pecos County such as a higher than average mortality rate, a lower than average and an inferior quality egg production. After keeping the birds for a year, they were disposed of at a substantial economic loss.

Appellee admittedly is not attempting to hold Purina in Pecos County by virtue of any standard negligence action but is relying on breach of warranty, express and implied. In so doing, he selected Pecos County as the damage or harm to the so-called defective product occurred there.

As to his theory of products liability and the place of injury, he is relying upon such cases as Teague Brick Sales Co. v. Dewey, 355 S.W.2d 249 (Tex.Civ.App.1962, Amarillo); Stull Chemical Company, Inc. v. Boggs Farmers Supply, Inc., 404 S.W.2d 78 (Tex.Civ.App.1966, Eastland); Josey Miller Company v. Wilson, 384 S.W.2d 231 (Tex.Civ.App.1964, San Antonio), and upon the Article on Venue and Jurisdiction Problems in Products Liability Cases, 33 Texas Bar Journal 697.

■ It is settled that for a Plaintiff to sustain venue in the County where the cause of action or a part thereof arose, the Plaintiff must prove that he has a cause of action against the Defendant by a preponderance of the evidence, and this means all elements of the cause of action as against the corporate Defendant whose plea of privilege is being contested. General Motors Corporation v. Ewing, 300 S.W.2d 714 (Tex.Civ.App.1957, Waco); Vol. 1 McDonald Texas Civil Practice 518; 14 Tex.Jur.2d 561.

■ The corporate Defendant has assailed the order overruling the plea of privilege on the no-evidence point that no cause of action has been proven against it. This of necessity requires us to disregard all evidence which is opposed or contrary and to give credit to all evidence favorable to the Plaintiff and to indulge every legitimate conclusion favorable to the Plaintiff which might have been drawn from the facts proved. Banks v. Collins, 152 Tex. 265, 257 S.W.2d 97 (1953); Strain Bros. Inc. v. Bennett, 456 S.W.2d 466 (Tex. Civ.App. El Paso, 1970). In doing so, we find that the Plaintiff testified that a salesman for Purina interested him in purchasing pullets; that the salesman took him to various farms where pullets were available and advised him that the birds could be purchased; that the Plaintiff assumed that Ralston Purina Company owned the various flocks of birds and that he still thought they did. After the Plaintiff agreed to take the birds in question, he signed a receipt for the birds when they were delivered which reflected that they were from Clearspan Farms as the seller; that a later security agreement which was executed by the Plaintiff showed that the birds were delivered by and purchased from Emmett L. Graham; that the Plaintiff's

first amended petition which was filed prior to the hearing and introduced into evidence by the Plaintiff admitted that the birds were obtained from Clearspan Farms and the uncontradicted testimony from an uninterested witness was to the effect that the birds never belonged to Purina but were sold by Clearspan. The evidence was also to the effect that the salesman represented that the birds were of high quality and would give good egg production. No statement was made as to how much production would be expected. At the time of delivery of the birds in July, 1967, they appeared to be under stress and looked tired but that from his past experience, the Plaintiff was able to state that the birds upon delivery after a trip usually look like that; that the Plaintiff first noticed that something was wrong with the production of the birds some three or four weeks after obtaining them; that he reported the condition of the birds to the salesman as soon as he found out about them and this was some two or three months after the birds had been delivered to him; that he had no idea as to what was causing the sub-standard production; that samples of the chickens were examined at a laboratory; that no one could find out what was wrong with them; that to this day, he had no evidence as to what was causing the excessive mortality, or the defective eggs. It can be said of the Plaintiff that half way through the life of the birds, he came to the conclusion that they were bad chickens but that he was not sure. It was undisputed that Purina was not engaged in the business of raising or selling chickens. .

While Purina makes an attack on this appeal covering a wide range of the law of products liability, we believe that our discussion can be narrowed to the simple lack of proof of any defect in the birds at the time of delivery. There is no evidence of any defect in the product at the time of delivery either by way of disease or deformity. As susceptible as chickens are to ailments, it is as logical from the facts before us to assume that the problem was due to lack of proper care or feeding after being in the hands of the Plaintiff or to some disease contracted after delivery as it would be to assume that bad breeding caused the loss.

"The principle of strict liability has been regarded as applicable only when the product leaves the manufacturer's hands in a defective condition. Liability on the basis of an implied warranty or breach of a tort duty independent of the contract is not so strict or absolute as to justify a recovery on the part of a user who merely shows that an injury was suffered in the course of a use or shortly thereafter—Everyone, therefore, would recognize that a manufacturer or other seller should not be responsible for any and every hurt that a user or one in vicinity of use suffers. Therefore, Courts that impose strict liability eliminating negligence as a requirement for recovery must adopt some rules or principles as a substitute for negligence as a delimiting principle. The method employed to date is the requirement that there must have been a defect in the product as it left the hands of the manufacturer."

\* Keeton, Products Liability, \* Liability Without Fault and the Requirement of a Defect. 41 Texas Law Rev. 855.

See the application of the principle in Jones v. Philco Distributors, Inc., 416 S.W. 2d 611 (Tex.Civ.App.1967 Ft. Worth). Strong circumstantial facts are lacking here such as were presented to the Court in O. M. Franklin Serum Company v. C. A. Hoover & Son, 410 S.W.2d 272 (Tex.Civ. App.1967, Amarillo) writ ref. n. r. e. with per curiam opinion in 418 S.W.2d 482. In a matter as complicated as genetics and with items as delicate as chickens, some scientific probability testimony would be in order under the weak factual circumstances presented before us. In other words, we hold that the plaintiff has failed to prove the existence of a "causative defect" in the product.

The Plaintiff having failed to show that he was entitled to maintain his alleged cause of action in Pecos County, as against this Defendant's plea of privilege, the judgment of the trial Court overruling the plea of privilege is reversed and rendered and the cause as to Ralston Purina Company is hereby directed to be severed and transferred to one of the District Courts of Dallas County, Texas, pursuant to Rule 89, Texas Rules of Civil Procedure.