**ELANCO PRODUCTS COMPANY, a Division of Eli Lilly & Co., Appellant,**

v.

**AKIN–TUNNELL, a Partnership, Appellee.**

No. 8185.

Court of Civil Appeals of Texas,
· Amarillo.

Dec. 13, 1971.

Rehearing Denied Jan. 10, 1972.

Evans, Pharr, Trout & Jones, John A. Flygare, Lubbock, for appellant.

Day, Owen & Lyle, Gene V. Owen, LaFont, Tudor, Tunnell, Formby & LaFont, Bill LaFont, Plainview, for appellees.

ELLIS, Chief Justice.

This is an appeal from a trial court judgment entered on a jury verdict awarding plaintiff-appellee breach of warranty dam-

ages against defendant-appellant Elanco Products Company, a Division of Eli Lilly & Company.

Reversed and remanded.

Appellee, Akin-Tunnell, a partnership, brought this action based on the alleged failure of the product Treflan, a herbicide, to control weeds in appellee's cotton fields in Hale County after its aerial application in the early part of 1969. Joined as defendants were Elanco Products Company, the manufacturer of Treflan; Joe Ramsey, the aerial spray applicator who applied the Treflan to appellee's crop; and Farmers Gin of Edmonson, Inc., the retail seller of Treflan. Appellee sued Elanco and Farmers Gin for breach of implied warranty based on strict liability in tort and express warranties. The action against Ramsey was in tort based on negligent application of the product.

Insofar as they are pertinent to the points of error raised by appellant in this court, the undisputed facts may be summarized as follows:

Elanco had caused certain billboard, television and magazine advertising to be done relative to the effectiveness of Treflan, and the advertising did not detail the methods of application of the product. In January, 1969, Elanco delivered a quantity of Treflan to Farmers Gin in Edmonson, Texas, which in turn sold fifteen 5-gallon cans and four quarts of the Treflan to Akin, a partner in the plaintiff partnership, at a cost of $1,902.20. The label on the containers provided certain instructions for the application of the product to be used in a mixture with 10–40 gallons of water per acre, but did not refer to aerial application. Likewise, among the exhibits in evidence, introduced as Ramsey #6, was a leaflet, purportedly intended for attachment to Treflan containers, entitled "Directions for use of Treflan," which specified only the amount of Treflan to be used per acre, not mentioning any water amounts, nor referring to aerial application. Also, a green colored card containing a statement to the effect that Elanco guarantees that Treflan will control weeds and grasses when used according to label instructions was provided the retailer for delivery to the purchaser. Ramsey, the aerial applicator, had read and understood Elanco's brochure on aerial application of Treflan which stated that for best results the product should be mixed with water so that the mixture would be applied at a minimum rate of five gallons of total liquid per acre and when the wind velocity did not exceed 5 miles per hour. Also, Ramsey gave testimony to the effect that the only thing that the Elanco representatives or dealers had specified to him regarding application was "be sure to put a pint and a half of Treflan per acre." Ramsey picked up the Treflan at Farmers Gin on instructions from Akin, but the green card was not delivered to him.[1] The Treflan was applied by airplane to approximately four hundred acres of appellee's land in late January or early February. (Ramsey hired another man to pilot the aircraft while Ramsey supervised and regulated the herbicide application. The expenses of the aerial application were paid by plaintiff-appellee). Ramsey sprayed 1½ pints of Treflan and 14½ pints of water per acre, for a total volume of two gallons of liquid per acre on appellee's land in winds conceded to be in excess of 5 miles per hour. After application, the Treflan was incorporated into the soil by laborers hired by Akin. Then in late March or early April, Akin watered the land and planted cotton on or about the first days of May. He used a rod weeder ahead of his planter to rid the fields of what few weeds had already grown during the months between incorporation and planting time. Soon after the planting and when the cotton was

---

1. The existence of the green card was not communicated to Akin until after the subsequent discovery of the weed problem. It was indicated on the card that it should be filled in, signed by the purchaser and mailed to Elanco within 30 days after the purchase; however, in this instance, the card was, at appellant's request, filled in and sent to appellant after the discovery of the problem.

in its early stages of growth, Akin noticed weeds in the cotton, and went to see Hodges, the retailer at Farmers Gin, who in turn notified Elanco representatives of the trouble. Hodges inspected the fields with Akin, and a week or so later, Akin, Hodges, and Elanco representative Larry Schoenrock met at Farmers Gin and then inspected the fields. Meanwhile, Akin had purchased a rolling cultivator to try to control the weeds, and had put laborers to work chopping the weeds in the cotton. Three weeks after Elanco representative Schoenrock visited the plaintiff-appellee's land, Elanco representative Mac Pritchett visited the cotton fields and spoke to Akin about the problem, suggesting that the Treflan had been applied improperly. Akin continued to have the fields chopped and hoed and before the cotton was harvested, every acre had been hoed three times.

The court granted an instructed verdict for defendant Farmers Gin, but denied similar motions by defendants Elanco and Ramsey. The trial was to a jury, who, after the presentation of evidence, answered the special issues submitted and made the following findings:

(1A) Defendant Ramsey did not apply the Treflan to the plaintiff's field at times so windy as to cause an improper application; (2A) Ramsey did not fail to use a sufficient volume of water to properly apply the Treflan; (3A) Ramsey caused to be dispensed from an aircraft an economic poison contrary to the directions on the label, but (3B) such dispensation by Ramsey was not negligence; (4A) the Treflan sold to appellee on the occasion in question was reasonably fit for the purposes for which it was intended to be used if used in accordance with the manufacturer's instructions;

(5A) defendant Elanco represented that Treflan would control weeds in cotton; (5B) appellee relied on such representations; (5C) the Treflan failed to control the weeds in appellee's cotton; (5D) the failure to so control the weeds was not caused by failure to apply the Treflan in accordance with the manufacturer's instructions; (6) the reasonable cash market value of the Treflan in question and around Hale County when sold to the appellee was $1,902.20; and (7) $4,915.00 would fairly and reasonable compensate the plaintiff for its increased cost of farming the cotton due to the failure of the Treflan to control the weeds.

On the basis of these findings, the trial court rendered judgment in favor of plaintiff-appellee against defendant-appellant Elanco for damages in the sum of $6,817.20 plus interest. The court further rendered judgment that plaintiff take nothing as to defendant Ramsey, and that Elanco take nothing by virtue of its cross action against Ramsey.

Appellant Elanco has perfected appeal to this court.

In its first of thirteen points of error, appellant assigns as error the trial court's refusal to grant judgment for appellant on the jury finding that Treflan was fit for its intended use when used in accordance with the manufacturer's instructions. Appellee concedes that this finding is fatal to any recovery under the theory of breach of implied warranty based on strict liability in tort. Appellee asserts that nonetheless this finding does not necessarily defeat its claim for recovery based on breach of "express" warranties, under § 2.313 of the Texas Uniform Commercial Code,[2]

2. Title 1, Texas Business and Commerce Code, (1967). Express warranties under the code are created as follows:
"§ 2.313. *Express Warranties by Affirmation, Promise, Description, Sample*
"(a) Express warranties by the seller are created as follows:
"(1) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
"(2) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

alleged to have been made by appellant Elanco with regard to its product, Treflan. In support of its contention, appellant cites the case of Ralston Purina Company v. Wiseman, 467 S.W.2d 669 (Tex.Civ.App.— El Paso 1971, no writ). A close examination of the basis for the decision in that opinion discloses, however, the product there involved was never owned or sold by the defendant Ralston Purina Company, and that the plaintiff was relegated to an action for strict liability in tort. This is further indicated by the fact that all of the cases cited and authorities quoted therein dealt with strict liability in tort.

 Representations in regard to goods that do not relate to their quality may come within the definition of express warranty under the Uniform Commercial Code, 8 Williston on Contracts, § 970 at 489 (3d ed. 1964). If in this case appellant Elanco could be shown to have warranted that Treflan would control weeds so long as it was applied in accordance with very broad and general instructions, as alleged by appellee, then its failure to do so would constitute a breach of the express warranty notwithstanding the fitness of the product for its intended use when used in accordance with some other instructions distributed by the manufacturer, which instructions were not sufficiently shown to have become a "basis of the bargain," as referred to in § 2.313 of the Code. Instructions which are not made a "basis of the bargain" are not relevant in determining a breach of the express warranty under § 2.313. For the above reasons, appellant's first point of error is overruled.

 ▪ In appellant's second and sixth points, it is contended that the trial court erred in refusing to render judgment for

appellant because appellee failed to secure a finding that the Treflan was defective or that a defect in the product caused the damage to the appellee. For the reasons assigned in overruling the first point, we overrule these points. A cause of action grounded on breach of an express warranty under § 2.313 of the Code does not fail because the plaintiff fails to prove a "defect" in the product—a breach of an *express* warranty is the failure of a product to comply with a definite warranty established by competent evidence.

In its third, fourth and fifth points of error, appellant complains of the trial court's failure to render judgment for appellant Elanco and against appellee Akin-Tunnell since the plaintiff failed to prove that the product was used "in accordance with the manufacturer's instructions."

 Appellee's ground of recovery on which it seeks to sustain the trial court judgment in its favor is a breach of an alleged express warranty under § 2.313 of the Texas Uniform Commercial Code. It appears to be appellee's contention that appellant Elanco expressly warranted, by means of magazine, billboard, television and brochure advertising and statements by Elanco representatives, that Treflan would control weeds in cotton so long as 1½ pints of Treflan were applied per acre, and that this express warranty was so general as to apply to an application such as that made by appellee's applicator—in winds above 5 miles per hour and with a total liquid spray of two gallons per acre. However, the only jury findings in support of a judgment based on the above theory of breach of express warranty were that: (5A) defendant Elanco represented that Treflan would control weeds in cotton; (5B)

"(3) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

"(b) It is not necessary to the creation of an express warranty that the seller use formal words such as 'warrant' or

'guarantee' or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty."

appellee relied upon such representations; and (5C) the Treflan failed to control the weeds in appellee's cotton.[3] Appellant sought throughout the trial of this cause to establish a number of important qualifications of the warranty that "Treflan would control weeds in cotton," specifically that it should not be applied in winds in excess of 5 miles per hour and that it should be applied in 5–40 gallons of liquid. These important qualifications, however, were not requested by appellee or by appellant as a part of the above issues. Further, the "label" instructions make no reference to aerial application, and there is inconsistency between the testimony pertaining to representations made by "Elanco representatives" and the available written instructions regarding aerial application of the product. Certainly the special issues pertaining to express warranty should have been framed in such a manner as to require the jury to make a specific finding as to what appellant Elanco "expressly warranted" that its product would do and under what circumstances or conditions. Appellant did request that the trial judge submit a special issue inquiring as to whether Elanco represented that Treflan would control weeds "as shown on its label when used in accordance with the manufacturer's instructions"; however, on appeal, appellant does not complain of the submission of the three above mentioned special issues, nor does it complain of the trial court's failure to submit appellant's own requested issue. Specific inquiries should have been made of the jury by means of proper issues raised by the evidence and pleadings to enable the making of a clear determination from the findings as to exactly which affirmations or promises related to the goods and became a part of the "basis of the bargain,"[4] so as to qualify as express warranties in accordance with the provisions of § 2.313;

whether the product failed to perform in accordance with those warranties; and if there were a finding of failure of Treflan, whether the failure, if any, was the result of its use contrary to those express warranty terms which constituted a basis of the bargain. With regard to the submission of evidence to the jury for making these determinations, the trial court must first determine whether certain evidence of affirmations or promises (oral or written) *may* qualify as an express warranty as that term is defined by § 2.313—if the court so finds, the evidence should be admitted for factual determination by the jury regarding the existence or nature of the express warranty. See Vol. 1, Anderson on the Uniform Commercial Code, § 2.313:7 (2d ed. 1970); see § 2.313:42 as to advertisements and catalogs as warranties.

■ , In a suit based on a breach of *implied* warranty of fitness under § 2.314 of the Texas Uniform Commercial Code, the burden is on the plaintiff to allege and prove that the product was used "as it was intended to be used and/or as the Defendant instructed it to be used." Texsun Feedyards, Inc. v. Ralston Purina Company, 311 F.Supp. 644, 645 (N.D.Tex.1970). We likewise hold that in order for a plaintiff to recover in an action such as that now before us, based on a breach of an *express* warranty under § 2.313 of the Code, the plaintiff must allege and prove that the product failed to perform in accordance with the express warranties (affirmations or promises relating to the goods which were a basis of the bargain) and that such failure was not caused by its use contrary to the express warranty terms.

It must be determined whether any "misuse" or "improper use" was the cause of the damages. If the jury finds this to be the case, no damages may be awarded plaintiff

3. Other findings by the jury, set out above, established the amount of damages.

4. ". . . (B)uyer's reliance on the seller's warranty, required under the Sales Act, is not a determinative element under the Code. See § 2.313(1) (a) and Draftsman's Comment 3 to § 2.313." Editor's Note, 2 Uniform Commercial Code Reporting Service 916 (1966). See also Gillette Dairy Inc. v. Hydrotex Industries, Inc., 440 F.2d 969, 974 (8th Cir. 1971).

under § 2.714 or § 2.715, which sections cover damages for warranty breaches under the Code. These sections must govern any damage findings in this case.

We feel compelled to mention that the legislative intent evidenced by the Code at § 2.313 (Express Warranties) does not appear so markedly different from the policies of Texas Court decisions on express warranties in pre-Code days that two pre-Code holdings (as to the plaintiff's burden to show compliance with conditions of an express warranty before he may recover) may be totally disregarded.[5] The policies underlying the following pre-Code opinions are analogous and persuasive to our holding: London v. Curlee, 336 S.W.2d 836, 837 (Tex.Civ.App.—San Antonio 1960, no writ) and Fetzer v. Haralson, 147 S.W. 290 (Tex. Civ.App.—San Antonio 1912, writ ref'd). Further, the court's holding in Gates Rubber Company v. Wood, 374 S.W.2d 785 (Tex.Civ.App.—Beaumont 1964 no writ) that "express warranty is a matter of contract" seems to be reasonably applicable to cases based on such warranties under the Code.[6] Our requirement that the plaintiff develop and prove his compliance with the terms of the "contractual" express warranty seems in accordance with contract principles. For all of the above reasons, we hold that the plaintiff failed to carry its burden of proof for a recovery under breach of express warranty in accordance with the Code.

The jury finding in this trial that Treflan was "not unfit for the purpose for which it was intended" precluded appellant's recovery under his claim of implied warranty,

thereby relegating plaintiff's claim for recovery to the asserted breach of an express warranty. If plaintiff is to recover on an express warranty, it must be grounded upon the failure of the product to comply with the warranty established by the proof. From this record, however, the express warranty was not found by the jury, and in fact the jury was not given the opportunity to determine whether the warranty alleged to exist by Elanco, or the one plaintiff alleged it relied upon, was indeed the express warranty made the basis of the bargain. This being true, there was no basis upon which the jury could have determined whether Joe Ramsey did or did not comply with the conditions of the express warranty, or was negligent in the manner of his application of the product. There are points and counterpoints raised in the briefs concerning the quantum of the evidence pertaining to the alleged acts of negligence of Joe Ramsey, the aerial applicator, but it is not necessary that we discuss these points in detail. This is for the reason that the jury did not determine the express warranty under which he operated. Further, any questions that may arise concerning the manner of Ramsey's application of the product should be treated and determined under principles governing tort liability.

Due to our holding with regard to the above matters, we deem it unnecessary to discuss the remaining points of error raised by the appellant.

In view of our holding regarding the plaintiff's failure to bear its burden of proof to support a judgment for recovery, and since there is a showing that the essential

---

5. The Uniform Commercial Code has been described as "sufficiently pre-emptive and comprehensive to meet the test of a true code." Hawkland, Article 9, Methodology, 1 Uniform Commercial Code Reporting Service 815, 818 (1965). The author further comments, on page 819, as follows:
"*Because* the U.C.C. is a true code, courts construing it should make some changes in their standard legal method. They should (1) use analogy rather than 'outside' law to fill Code gaps;

(2) rely somewhat more heavily on the decisions of other Code states in making their own decisions; and (3) give their own decisions somewhat less permanent precedential value."

6. " . . . (T)he express warranties provided for in U.C.C. § 2.313 are a part of the basis of contracting, and thus are 'contractual' express warranties." 1 Anderson on the Uniform Commercial Code, § 2.313:7 at f. n. 8, p. 485.

issues in this case were not fully developed, we are of the opinion that the rights of the parties should not be foreclosed in the present state of the record. Richards v. Rule, 207 S.W. 912, 914 (Tex.Com.App.— 1919, jdgmt. adopted). We, therefore, reverse and remand this cause to the trial court for a new trial.