**ELANCO PRODUCTS COMPANY, a Division of Eli Lilly & Company, Appellant,**

**v.**

**AKIN–TUNNELL, a Partnership, Appellee.**

**No. 8488.**

Court of Civil Appeals of Texas, Amarillo.

Oct. 29, 1974.

Rehearing Denied Nov. 25, 1974.

Evans, Pharr, Trout & Jones, Charles B. Jones, Lubbock, for appellant.

La Font, Tunnell, Formby, La Font & Hamilton, Bill La Font, Plainview, for Akin-Tunnell.

Day, Owen & Lyle, Gene V. Owen, Plainview, for Joe Ramsey.

REYNOLDS, Justice.

A partnership recovered judgment against the manufacturer of a herbicide on jury findings that the lack of compliance with the conditions of the express warranty was not the proximate cause of the damages assessed for the failure of the herbicide to perform in accordance with the express warranty. The jury absolved the third-party applicator of the herbicide

from all liability. The unchallenged findings of non-compliance with the conditions of the express warranty defeated the partnership's cause of action and entitled the manufacturer to judgment. Affirmed in part; reversed and rendered in part.

Following the first trial remand reported in Elanco Products Company v. Akin-Tunnell, 474 S.W.2d 789 (Tex.Civ.App.—Amarillo, 1971, writ ref'd n. r. e.), Akin-Tunnell, a partnership composed of Akin-Enterprises, Inc., and Tunnell Enterprises, Inc., proceeded with its suit against Elanco Products Company, a division of Eli Lilly & Company, and Joe Ramsey.[1] As the pleadings were redrawn for the present trial, the partnership sought to impose liability on Elanco for the failure of its product Treflan, a herbicide, to control weeds in the partnership's cotton field on theories of breach of express warranty and negligence, and to hold Ramsey, who had been hired by the partnership to aerially apply the Treflan, for his negligent application of the herbicide, Ramsey being further subjected to Elanco's cross-action for contribution in the event Elanco was held liable to the partnership.

Summarized, the evidence leading to the jury submission is that the herbicide Treflan, an economic poison, was commercially marketed in 1964 for application to the soil by the use of ground rigs, and it was approved for aerial application late in 1968.

For its application, Treflan is mixed with water, which is utilized only as a carrying agent. Although no one professed to know exactly what makes Treflan control weeds, Elanco is willing to guarantee its product will control weeds if the recommended quantity of Treflan mixed with the recommended amount of water is applied uniformly to each acre of land according to directions and then incorporated into the soil.

Raymond Akin, after having seen Elanco's advertisements that were directed to the effectiveness of Treflan without specificity as to its application, purchased on behalf of the partnership a quantity of the herbicide from the Farmers Gin of Edmonson, Inc., on December 30, 1968, for later delivery. Although Akin looked at the label on the Treflan can, he did not read it at the time of purchase. The label, among its other information, carried the wording:

## DIRECTIONS FOR USE

Read all directions carefully before applying

\*   \*   \*   \*   \*   \*

The manufacturer makes no warranties, express or implied, concerning this product or its use, which extend beyond the description on the label. All statements made concerning this product apply only if used as directed.

---

1. The first trial partnership pleadings were drafted to seek damages from Elanco, Farmers Gin of Edmonson, Inc., and Ramsey for the failure of Elanco's product Treflan, a herbicide sold by the gin and applied by Ramsey, to control the weeds on the partnership's cotton land on the theories of breach of both implied and express warranties, Ramsey also being charged with negligent application of the herbicide. By its cross-action, Elanco sought to offset any liability it had by way of indemnity, or at least contribution, from Ramsey for his negligence in the application.

Prior to and upon the first trial, the court granted a partial summary judgment in favor of Ramsey on the issues of implied and express warranties he was alleged to have given to the partnership, and the court instructed a verdict favorable to the gin, to which no complaint was registered. Judgment was entered on the jury's verdict in favor of the partnership against Elanco and both were denied any recovery from Ramsey. Elanco appealed.

The partnership conceding on appeal that one jury finding was fatal to its recovery on its implied warranty theory, its judgment was reversed, without a resolution of Elanco's evidentiary points of error, upon the determination that the express warranty constituting the basis of the bargain had not been fully established. The cause was remanded for full development of the essential issues. See Elanco Products Company v. Akin-Tunnell, 474 S.W.2d 789 (Tex.Civ.App.—Amarillo 1971, writ ref'd n. r. e.), for further particularization.

However, the label, while containing directions for ground rig application of the herbicide at the rates recommended on attached literature for specific crops and its incorporation into the soil, made no reference to aerial application. The instructions for application by aircraft were contained in a separate brochure.

Joe Ramsey, who was hired by the partnership to make aerial application of the purchased Treflan at the recommended rate of one and one-half pints to each acre of the partnership's 393 acres of cotton land in Hale County, obtained the herbicide from the gin in the latter part of January of 1969 at Akin's direction. Ramsey had seen and he was familiar with Elanco's aerial application instructions to apply one and one-half pints of Treflan mixed with five to ten gallons of water to each acre of land, and not to apply it by aircraft when the wind velocity was five miles an hour or greater. Nevertheless, the application made under Ramsey's supervision was the designated amount of Treflan mixed with only two gallons of water to each acre between late January and early February of 1969 when, as he said, "I'm sure that the wind might have got above five miles an hour while—sometime during when I was applying it." He stated that he used only two gallons of water per acre because that was customary in Hale County and an Elanco representative, in explaining the necessity of one and one-half pints of Treflan being applied to each acre, made no mention of the water and wind requirements. There was testimony that the aerial spray did not, as well as testimony that it did, drift excessively.

The sprayed herbicide was incorporated into the soil, and the land was prepared for planting and watered. During the first part of May of 1969, cotton was planted behind a rod weeder used to kill weeds coming up in the field. Thereafter, weeds appeared in the growing cotton and on May 28, 1969, Akin notified a gin employee who, after inspecting the field, contacted an Elanco representative.

It being discovered that Akin had not signed the registration card which should have been given to and signed by him when the gin sold the Treflan, the gin sales manager, at the request of Elanco and for the obstensible purpose of registering the guarantee of the herbicide, completed the registration card and had Akin sign it. The card, mailed May 28, 1969, contained these words:

Elanco Products Company guarantees that Treflan will control weeds and grasses on its current label when used according to label instructions.

The partnership used the techniques of cultivating and hoeing to control the weeds in the cotton. It was the unanticipated expenses incurred for weed control, together with the costs of the Treflan and its application, that the partnership sought to recover.

After inspections were made of the field, Elanco denied any liability, assigning as the reason an improper application of the herbicide. This litigation ensued.

To the jury, the trial court submitted the partnership's claim against Elanco on the theory of breach of an express warranty arising under V.T.C.A., Bus. & C. § 2.-313(a)(1),[2] and its claim against Ramsey on the theory of negligence. Quoted in full with the jury's responses thereto are these special issues:

## ISSUE NO. 1

Do you find from a preponderance of the evidence that Defendant Elanco made an affirmation of fact or promise to Plaintiff that Treflan would control weeds in cotton?

---

2. The language of § 2.313(a)(1) of the Texas Business and Commerce Code (1967) is: "Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise."

ANSWER "it did" or "It did not"

ANSWER: It did

In connection with the above special issue you are instructed that such affirmation of fact or promise may be by written statements made by the Defendant Elanco to the Plaintiff by description of the goods to be sold, or by sample or model of the goods to be sold.

If you have answered Issue No. 1 "It did", then answer the following issue; otherwise, do not answer the following issue:

## ISSUE NO. 1A

Do you find from a preponderance of the evidence that such affirmation of fact or promise, if you have so found, was not subject to the condition that the Treflan be applied in accordance with the manufacturer's instructions?

ANSWER "It was subject" or "It was not subject"

ANSWER: It was subject

If you have answered Issue 1A "It was subject", then answer the following issue; otherwise, do not answer the following issue:

## ISSUE NO. 1B

Do you find from a preponderance of the evidence that a part of the manufacturer's instructions for aerial application was that the Treflan be applied in 5 to 10 gallons of water per acre?

ANSWER "It was" or "It was not"

ANSWER: It was

If you have anwered Issue No. 1B "It was", then answer the following issue; otherwise, do not answer the following issue:

## ISSUE NO. 1C

Do you find from a preponderance of the evidence that the failure to apply Treflan in 5 to 10 gallons of water per acre was a proximate cause of the failure, if any, of Treflan to control weeds?

ANSWER "It was" or "It was not"

ANSWER: It was not

If you have answered Issue 1A "It was subject", then answer the following issue; otherwise, do not answer the following issue:

## ISSUE NO. 1D

Do you find from a preponderance of the evidence that it was a part of the manufacturer's instructions for aerial application that the Treflan not be applied in winds in excess of five miles per hour?

ANSWER "It was" or "It was not"

ANSWER: It was

If you have answered the foregoing issue "It was", then answer the following issue; otherwise, do not answer the following issue:

## ISSUE NO. 1E

Do you find from a preponderance of the evidence that the Treflan in question was applied in winds in excess of five miles per hour?

ANSWER "It was" or "It was not"

ANSWER: It was

If you have answered the foregoing issue "It was", then answer the following issue; otherwise, do not answer the following issue:

## ISSUE NO. 1F

Do you find from a preponderance of the evidence that the application of Treflan in winds, in excess of five miles per hour, if you have so found, was a proximate cause of the failure, if any, of the Treflan to control weeds?

ANSWER "It was" or "It was not"

ANSWER: It was not

If you have answered Issue No. $\underline{1}$ "It did," then answer Issue No. $\underline{2}$; otherwise, do not answer Issue No. $\underline{2}$.

## ISSUE NO. $\underline{2}$

Do you find from a preponderance of the evidence that such affirmation of fact or promise, if any, became a part of the basis of the bargain between Plaintiff and Defendant ELANCO?

Answer "it did" or "It did not"

ANSWER: It did

The jury further answered correspondingly with the numbered special issues that (3) the partnership relied on such affirmation of fact or promise made by Elanco; that (4) the Treflan failed to perform in accordance with such promises or affirmations of fact made by Elanco to the partnership; that (5, 6) the failure to perform resulted in and proximately caused a pecuniary loss to the partnership (10) in the sum of $6,200.25; that (7A) Ramsey did not apply the Treflan at times so windy as to cause an improper application; that (8A) Ramsey did not fail to use a sufficient volume of water to properly apply the Treflan; and that (9A) Ramsey did cause to be dispersed from an aircraft an economic poison contrary to the directions on the label, but that it was not (9B) negligence nor (9C) a proximate cause of any damage.

Accepting the jury's verdict and granting the motion of the partnership therefor, the trial court entered judgment decreeing that the partnership recover from Elanco the sum of $6,200.25, with interest thereon at the rate of 6% per annum from December 30, 1968, and costs. The court further decreed that both the partnership and Elanco be denied any recovery with respect to their actions against Ramsey.

As this appeal is postured, Elanco complains only of the judgment entered against it in favor of the partnership, it being Elanco's position that it is entitled to judgment under the verdict of the jury. Although Elanco attacks both the evidentiary support for and the legal sufficiency of the jury's findings absolving Ramsey of blame for the manner of dispersion of the herbicide insofar as the findings may support the partnership's judgment, neither Elanco nor the partnership challenges the judgment rendered for Ramsey. The partnership has presented no complaint against the court's charge nor any counter-point questioning any jury finding.

The primary thrust of Elanco's appeal is that the findings of failure to comply with the conditions of the express warranty which formed the basis of the bargain defeated the partnership's cause of action against Elanco, the element of causation being immaterial where there has not been a compliance with the conditions precedent to the existence of the express warranty. The partnership replies that it was only necessary, under our former opinion in this case, for the jury to decide if the herbicide failed to perform in accordance with the express warranty, and whether the failure was not the result of its use contrary to the express warranty terms; and, since the jury found these issues in its favor, its judgment should be affirmed.

The partnership's cause of action alleged against Elanco, as previously stated, was submitted to the jury on the theory of breach of an express warranty arising under V.T.C.A., Bus. & C. § 2.313(a)(1) and made by Elanco to the partnership as a part of the contract for sale of the Treflan. Given this cause of action and acknowledging the vitality of the long followed principle that "a compliance with the conditions of a warranty must be shown before a recovery can be had thereon" definitively declared in London v. Curlee, 336 S.W.2d 836, 837 (Tex.Civ.App.—San Antonio 1960, no writ), and Fetzer v. Haralson, 147 S.W. 290, 294 (Tex.Civ.App.—San Antonio 1912, writ dism'd jdgmt cor.), we held in the prior appeal of this case that the partnership must develop and prove

compliance with the terms of the contractual express warranty before the partnership could recover for a breach thereof. Elanco Products Company v. Akin-Tunnell, supra, 474 S.W.2d at 794.

■ The terms of the contractual express warranty were developed by the jury's findings that the basis of the bargain between the parties—that is, the express warranty made by Elanco to the partnership—was that Treflan would control weeds in cotton, conditioned that it be applied in accordance with Elanco's instructions, among which were the two instructions that aerial application of Treflan be applied in five to ten gallons of water per acre and that it not be applied in winds in excess of five miles per hour. But the partnership did not prove that there had been a compliance with those two instructions found to be conditions precedent to the activation and enforcement of the warranty. Instead, the jury found that both of the instructions had been violated. The findings are not challenged. The unquestioned findings of non-compliance with the conditions precedent are fatal to the partnership's right of recovery. Elanco Products Company v. Akin-Tunnell, supra; London v. Curlee, supra.

The unchallenged jury findings that the violated aerial application instructions were conditions of the affirmation of fact or promise that became a part of the basis of the bargain foreclosed the partnership's cause of action for breach of express warranty, and the remaining jury findings were rendered legally ineffective. This circumstance is dispositive of the partnership's assertions that the jury did not factually find the instructions themselves, which the evidence shows were unknown to Akin at the time of purchase, to be a part of the basis of the bargain and that, therefore, the partnership was not required to literally comply with such instructions, but was held only to a substantial compliance which the jury found. Moreover, in this connection, it must be noticed that the manufacturer does not and cannot be held to insure that its goods will meet every expectation of the buyer unless there is a compliance with the express warranty terms.

However, further comment is necessary concerning the partnership's interrelated contention that since it discharged its burden, as required by our prior opinion, to prove that the herbicide failed to perform in accordance with the warranty and that such failure was not the result of its use contrary to the express warranty terms, it merited the judgment entered by the trial court. This contention is referenced to the language contained in Elanco Products Company v. Akin-Tunnell, supra, 474 S. W.2d at 793. There we said:

> Specific inquiries should have been made of the jury . . . to enable the making of a clear determination from the findings as to exactly which affirmations or promises related to the goods and became a part of the "basis of the bargain," so as to qualify as express warranties in accordance with the provisions of § 2.313; whether the product failed to perform in accordance with those warranties; and if there were a finding of failure of Treflan, whether the failure, if any, was the result of its use contrary to those express warranty terms which constituted a basis of the bargain.

It must be recognized, and undoubtedly our opinion should have more explicitly stated, that the language was predicated on, and envisioned the development in another trial of, the unique situation presented by the first trial record. The picture presented to us then was painted in very broad strokes. At that time, it was the partnership's stated contention that the Treflan was expressly warranted to "control weeds so long as it was applied in accordance with very broad and general instructions," the very generality of which would allow the showing of a compliance and yet might raise—albeit under unusual circumstances —Elanco's urged issue of use contrary to "a qualification" embraced within the broad

and general instructions. As constituted, the record we then reviewed lent credence to both contentions. But, of course, the language addressed to the contigent situation did not purport to, and it could not, override the dominant holding of the opinion that established warranty law required the partnership to develop and prove compliance with the terms of the express warranty before it could recover for a breach thereof.

Nevertheless, the contingent situation to which the language spoke was not developed in the present trial. Developed with more finely drawn lines is the situation that specific conditions precedent to the efficacy of the express warranty were not complied with, and this determination necessarily precluded a factual finding that the herbicide "failed to perform in accordance with" the express warranty. When the partnership did not succeed in discharging its burden to prove compliance with the express warranty terms, its right to recover for breach of an express warranty was defeated, and it mattered not whether, and the partnership could not recover by showing that, the failure of the Treflan to perform was not the result of its use contrary to the express warranty terms. To hold otherwise and permit recovery despite the findings of non-compliance with the conditions precedent would, in our opinion, not only render nugatory and meaningless the very basis of the bargain found to exist between the parties, but would sanction a new and different express warranty that the promisor had not made at the time of the sale. Accordingly, to the extent that the language in our former opinion may be construed to permit recovery for failure of goods to conform to an express warranty made the basis of the bargain by showing that a use contrary to the express warranty terms was not the result of, or did not cause, such failure to perform, the language is disapproved.

Elanco's points of error directed to the error of the trial court in failing to grant its motion for judgment and in entering judgment for the partnership on the jury's verdict are sustained. The remaining points become moot and they are not reached.

That part of the trial court's judgment denying the partnership and Elanco any recovery against Joe Ramsey is affirmed; that part of the judgment decreeing that the partnership recover from Elanco is reversed, and judgment is here rendered that Akin-Tunnell, a partnership, take nothing by its suit against Elanco Products Company. Rule 434, Texas Rules of Civil Procedure.