Floyd Melcher, appellant, v. Boesch Motor Company, a partnership, et al., appellees.

198 N. W. 2d 57

Filed May 26, 1972. No. 38259.

George H. Moyer, Jr., and Moyer & Moyer, for appellant.

Jewell, Otte, Pollock & Gatz and Robak & Geshell, for appellees.

Heard before Spencer, Smith, and Newton, JJ., and Stuart and Buckley, District Judges.

Buckley, District Judge.

This is an appeal by the plaintiff, Floyd Melcher, from a jury verdict and a judgment for the defendants Boesch Motor Company, a partnership, hereafter called

"Boesch," and Ford Motor Company, a corporation, hereafter called "Ford," in an action for damages based upon a breach of express warranty.

Plaintiff alleged in his petition that on April 14, 1967, he purchased a new Ford pickup truck from Boesch, a sales and service dealer of Ford products, in Humphrey, Nebraska. From the beginning, the truck used an abnormal amount of oil, until, when it had been driven nearly 25,000 miles, it threw a connecting rod and destroyed the engine. His petition seeks damages for breach of Ford's express warranty of the engine block, head, and all internal parts to be free from defects in material and workmanship.

The defendants in their answers deny that the engine failure was caused by factory defective material or workmanship; and for affirmative defenses allege that plaintiff: (1) Failed to comply with the required maintenance services which form a condition precedent to liability on the warranty, (2) subjected the truck to abnormal use by operating it without sufficient oil contrary to warranty requirements, and (3) materially altered the motor, by converting the fuel system to propane without the consent of the defendants.

The material portions of the warranty are:

"BASIC WARRANTY

"Ford Motor Company warrants to the owner each part of this vehicle to be free under normal use and service from defects in material and workmanship for a period of 24 months from the date of original retail delivery or first use, or until it has been driven for 24,000 miles, whichever comes first.

"POWER TRAIN WARRANTY

"In addition, Ford Motor Company further warrants to the owner each part of the engine block, head, and all internal engine parts, . . . and all internal transmission parts . . . of this vehicle to be free under normal use and service from defects in material and workmanship for a period five (5) years from the date of

original retail delivery or first use, or until it has been driven for fifty thousand (50,000) miles, whichever comes first. . . .

"GENERAL WARRANTY PROVISIONS

"It is a condition of both these warranties that the owner maintain this vehicle according to the required maintenance services set forth in the Maintenance Schedule in this Owner's Manual. It is also a condition of both of these warranties that, every twelve months, the owner furnish an authorized Ford or Lincoln-Mercury dealer with evidence that these maintenance services have been performed and obtain the dealer's written certification that he has received such evidence.

"Both of these warranties shall be fulfilled by the Selling Dealer. . . .

"The warranties-herein are expressly IN LIEU OF any other express or implied warranty, including any implied WARRANTY of MERCHANTABILITY or FITNESS, and of any other obligation on the part of the Company or the Selling Dealer."

Plaintiff complains that the trial court should not have submitted to the jury the defense of his failure to comply with the service requirements and to obtain the required certification of such compliance, for two reasons: (1) There is no evidence that he failed to perform the required maintenance or that any failure caused or contributed to the loss, and (2) the requirement that plaintiff obtain from defendants a certification of compliance is unconscionable and unreasonable and, therefore, unenforceable.

Plaintiff read the operator's manual furnished him by Boesch when he received the truck. It contains the warranty and also the maintenance schedule setting forth the required maintenance services. One of them is "Change Rotunda Motor Oil and Autolite Oil Filter" every 6,000 miles. The schedule also requires that this service, as well as many others not material here, "must be performed as indicated, and certified by

an authorized Ford dealer every 12 months, to keep the warranties in force. You must show the dealer the bills for any outside services and they must indicate that parts and lubricants of Autolite, Rotunda or equivalent quality were used."

Plaintiff, a young farmer living near Madison, Nebraska, used the pickup truck for general farm work, including hauling gas cans and pulling wagons. When the truck had 1,612 miles, he took it to Boesch for a 1,000 mile check and a change of oil and filter. After that he testified he changed the oil and the filter himself at 2,573, 4,700, 7,010, 8,812, 10,410, 13,062, 14,374, 16,526 and 20,735 miles (defendants do not contend that any oil or filter used did not meet warranty specifications as to quality). He stated he took the truck to Boesch at 8,300 miles, again at 12,000 miles, at 18,000 miles, and at 24,000 miles and told them to make a check but didn't know if they did or not. He asked about the required certifications but was told each time it wasn't necessary and did not obtain any. No charges were made for any warranty service check-ups, and both Jerry Boesch and Harry Boesch, partners of Boesch, the two parties plaintiff dealt with, deny that plaintiff ever asked the required services be performed, or that he showed evidence they had been done, or that he requested certifications they were done.

This conflict in testimony presents a question of fact for the jury as to whether the plaintiff complied with the service requirements, and that issue was properly submitted.

Whether, as defendants contend, the failure to comply with these service requirements caused the engine failure is immaterial. Plaintiff grounds his cause of action upon a breach of the express warranty. The service requirements and certifications were conditions precedent to be performed by plaintiff. The burden of proof is on the party relying on a breach of warranty to show performance of conditions as to which

the right to assert the warranty depends, or waiver thereof, or excuse for nonperformance. Worden v. Sycamore Marsh Harvester Co., 11 Neb. 116, 7 N. W. 756; 77 C. J. S., Sales, § 365, p. 1283. See, also, Metschke v. Marxsen, 176 Neb. 240, 125 N. W. 2d 684.

For his reply to defendants' answers that no required certifications were obtained, plaintiff asserts that such a provision is unconscionable and unreasonable and, therefore, unenforceable. He asserts error in failing to instruct the jury on this issue.

It is not a jury question. The conscionability of the provision became a matter of law for the court. § 2-302, U. C. C. It is commented, under that section, that: "The basic test is whether in the light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract. . . . The principle is one of the prevention of oppression and unfair surprise . . . and not of disturbance of allocation of risks because of superior bargaining power."

The basis for the certification clearly is reasonable. The requirements of an owner to properly maintain the engine of his vehicle in exchange for a warranty that it is free of defect in material and workmanship at time of delivery go hand-in-hand. But plaintiff contends that the required certification puts Ford and Boesch in the position of sole arbitors as to what is sufficient maintenance and he cites Mills v. Maxwell Motor Sales Corp., 105 Neb. 465, 181 N. W. 152, and Henningsen v. Bloomfield Motors, 32 N. J. 358, 161 A. 2d 69, 75 A. L. R. 2d 1. Both cases involved warranties similar to the one involved here, but both required that the alleged defective parts be shipped to the manufacturer's factory, where it reserved the right to determine if the parts were defective. In Mills v. Maxwell Motor Sales Corp., *supra*, we said: "It would,

nevertheless, be repugnant to every conception of justice to hold that if the parts thus returned for examination were, in point of fact, so defective as to constitute a breach of the warranty, the appellee's right of action could be defeated by the appellant's arbitrary refusal to recognize that fact. Such an interpretation would substitute the appellant for the courts in passing upon the question of fact, and would be unreasonable. *The provision in question should not be so construed upon a retrial of this cause."* (Emphasis supplied.) The certification requirement should not be so construed here, as it would give Boesch and Ford the unqualified right to refuse the certification and defeat plaintiff's claim. While the plaintiff must furnish Boesch with evidence of performance of the required maintenance services, Boesch may not then unreasonably withhold the certification. If it does, the condition precedent that plaintiff obtain such certification is waived. Thus construed, the provision is not unreasonable.

Plaintiff assigns as error instruction No. IV, wherein the jury was instructed in part that: "In this case the plaintiff has offered evidence suggesting that demand was made on the defendant Boesch Motor Company for the performance of all required service checks and appropriate certification. If you find by a preponderance of the evidence that such fact has been established, the performance of the conditions precedent to the enforcement of the warranty contract are waived; that is, the law does not require them." The instruction correctly construed the applicability of the required certification.

Plaintiff assigns as error the submission of the issues of abnormal use and material alteration to the jury, contending that neither issue was supported by competent evidence.

In testing the sufficiency of the evidence to support a judgment, the evidence must be considered in the light most favorable to the successful party. Haney v.

L. R. Foy Constr. Co., Inc., 186 Neb. 528, 184 N. W. 2d 628; McGerr v. Beals, 180 Neb. 767, 145 N. W. 2d 579.

A jury verdict based upon conflicting evidence will not be set aside unless it is clearly wrong. Haney v. L. R. Foy Constr. Co., Inc., *supra*.

It is not the province of this court in reviewing the record in a law action to resolve conflicts in or weigh the evidence. Satterfield v. Watland, 180 Neb. 386, 143 N. W. 2d 124.

Plaintiff testified that the truck used too much oil from the beginning, but he vascillated considerably as to the actual oil consumption. Generally he said the oil consumption gradually increased from the time he got the pickup until the engine blew up. Otherwise he ranged from a quart per 300 to 500 miles at the start to six quarts in the first 1,000 miles, from two to three quarts per 1,000 up to 10,000 miles, to three to five quarts at 10,000 miles, from no change from 10,000 to 15,000 miles to "getting worse after ten to twelve thousand miles," from three to six quarts at 15,000 miles, six to seven quarts at 17,000 miles, increasing after that to a quart per 100 miles at the end.

The evidence indicates one quart of oil per 750 miles is an acceptable rate of oil consumption at 10,000 miles, which should not change up to 24,000 miles.

A mechanic examined the engine nearly 2 years after it blew up. He found that the two rear rods had come loose from the crankshaft and burned out, and one went through the side of the block. The other rod bearings showed excessive clearance between them and the crankshaft indicating a lack of oil pressure to them. This excessive clearance would cause oil to escape around the bearings and be thrown to the cylinder walls where it can more easily be picked up by the rings and burned. He removed the cylinder heads and found that the intake valves were oily and had excessive clearance in the valve guides. This indicated that oil was drawn down the valve guides and into the cylinder. He gave

his opinion that the excessive clearance in the valve guides was caused by a defect in material or workmanship at the time of manufacture, which in turn resulted in excessive oil consumption, in turn causing unusual engine wear, and finally causing the rod bearing to go out.

There is no evidence to refute plaintiff's contention that the truck used large amounts of oil or that the bearing failure was directly attributable to either a lack of sufficient oil or any oil at all. The mechanic stated that the loose valve guides would cause the engine to be constantly low on oil, that the rod bearings and main bearings were scuffed, probably from being low on oil, and that the exhaust valves had an abnormal amount of carbon deposits, indicating a high rate of oil consumption.

The jury could have found from the evidence that plaintiff operated the truck without sufficient oil during all the time he complained of excessive oil consumption, and that he did not bring this problem to the attention of Boesch until the truck had 18,000 to 20,000 miles, at which time successive 2,000 and 3,000 mile oil consumption checks were made by the plaintiff at Boesch's direction. The second check was in progress at the time the engine went out. At that time plaintiff and two brothers-in-law checked the oil level and found it a quart and one half low. Boesch towed the truck to its garage the next day and there no oil showed on the dipstick. When the engine was drained, about a cupful of oil remained. Some oil could have escaped in the towing.

In addition, the Ford operator's manual provides for six quarts of oil to be used when changing the oil and oil filter. When plaintiff changed the oil and filter himself, he did not use quart cans but poured it from a 5 gallon can until it was full.

The evidence clearly warranted the submission of the defense of abnormal use to the jury. The court instructed the jury that: ". . . you shall consider such

abnormal use if shown by a preponderance of the evidence, . . . along with all other evidence in determining whether the defects complained of by the plaintiff were in existence at the time of the delivery of the pickup . . . ." The instruction correctly limited the jury's consideration of abnormal use to one of evidence in its essential determination, namely, whether the engine failed because it was defective at the time of delivery to the plaintiff. Plaintiff's assignment of error is without merit.

Plaintiff also attacks the defense of material alteration on the same basis, namely that there was no evidence showing the conversion to propane increased oil consumption or caused any other engine defect that could have caused the rod bearing to go out. As stated previously, the evidence unequivocally established that the engine failure was caused by the engine being operated without sufficient oil for a considerable length of time resulting from excessive oil consumption. But plaintiff contends that there is no evidence to causally relate the increase in oil consumption to the propane conversion.

The warranty does not prohibit such a conversion to propane. The conversion involves the carburetor system, with a different carburetor, fuel tank, fuel pump, and fuel filter being installed. Special piston rings, valve seats, and intake manifolds are used in factory propane engines. There is no evidence that such parts were used in the conversion here.

The piston rings must seal to the cylinder wall to the point where oil won't go around them and be burned up. This "seating of the rings" is a part of the breaking in of the engine and takes approximately 6,000 miles to complete. Therefore, it is expected that oil consumption would be relatively high for the first 1,000 miles, but should steadily improve until the rings are seated.

While the evidence was conflicting, the jury could

have found that it is more difficult to seat rings in a propane engine, and that an engine should not be converted to propane until the rings are seated. Plaintiff was told by Jerry Boesch that he didn't think the rings were seated at 10,000 miles, and he felt if they weren't seated by then they never would be, so plaintiff converted to propane at 10,000 miles without telling Boesch.

Among conflicting testimony by the plaintiff himself, he stated initially on direct examination:

"Q. Did you notice any change in the oil consumption as you drove the pickup more miles?

"A. Not a lot, until I got over ten, twelve thousand miles. After that it started getting worse. Up to then it stayed about the same.

"Q. When it got up to ten or twelve thousand miles, then what did the oil consumption do?

"A. It kept getting worse."

As to the defense of abnormal use, the court instructed the jury that it could consider the conversion to propane as evidence in determining whether the defects complained of existed at the time of delivery of the truck to plaintiff. From the evidence, the jury was entitled to conclude that the conversion to propane was instrumental in the lack of seating of the piston rings, which directly resulted in the increased oil consumption that led to the engine failure. The defense of material alteration was properly submitted to the jury by the instruction given.

Plaintiff assigns as error the failure of the trial court to give the jury four forms of verdict instead of two. The forms of verdict submitted were: (1) "For the plaintiff, and assess the damages at $————." (2) "For the defendants." In his brief, plaintiff says: "By its sixth instruction, the Court told the jury that the defendants were jointly and severally liable. Obviously this required four forms of verdict." Since plaintiff does not assign as error the giving of that instruction,

we presume he contends there was some basis for a finding by the jury of liability against one defendant and not the other, but he does not mention this in his brief or oral argument.

The warranties were issued by Ford but delivered to the plaintiff by Boesch. They provide that "Both these warranties shall be fulfilled by the Selling Dealer . . . ." Plaintiff called upon both Boesch and Ford to replace the engine under the warranty. The rights and obligations of Boesch and Ford on the warranty to the extent involved in this case were identical. The two forms of verdict were the only ones which the jury could have returned on the issues.

The record is silent as to any conference on instructions or forms of verdict. Plaintiff objected for the first time in his supplemental motion for new trial. Objections to the forms of verdict should be made before or at the time the verdict is returned. McGrew Machine Co. v. One Spring Alarm Clock Co., 124 Neb. 93, 245 N. W. 263; In re Estate of Kajewski, 134 Neb. 485, 279 N. W. 185.

Plaintiff complains that the trial court withdrew from the jury the element of incidental and consequential damages. The verdict was necessarily a finding by the jury that the defendants were not liable under the terms and conditions of the express warranty. The error, if any, in any instructions stating the measure of damages must necessarily be harmless. Perrine v. Hokser, 158 Neb. 190, 62 N. W. 2d 677.

The judgment of the district court was correct and is affirmed.

AFFIRMED.