992 F.2d 774
 John T. FOY, Individually and derivatively as a shareholder
of JEK Industries, Inc., Plaintiff-Appellee,
v.
James KLAPMEIER, a resident of Minnesota; Boatel
Industries; JEK Industries, a Minnesota
corporation; Klapmeier Management, a
Minnesota corporation,
Defendants-Appellants.
Boatel Catamaran, a Minnesota corporation, Defendant.
JEK INDUSTRIES, Plaintiff-Appellant,
v.
John Thomas FOY, Defendant-Appellee.
John T. FOY, Individually and derivatively as a shareholder
of JEK Industries, Inc., Plaintiff-Appellant,
v.
James KLAPMEIER, a resident of Minnesota; Boatel
Industries; JEK Industries, a Minnesota corporation;
Klapmeier Management, a Minnesota corporation; Boatel
Catamaran, a Minnesota corporation, Defendants-Appellees.
John Thomas Foy, Plaintiff-Appellant,
JEK Industries, Defendant-Appellee.
John T. FOY, Individually and derivatively as a shareholder
of JEK Industries, Inc., Plaintiff-Appellee,
v.
James KLAPMEIER, a resident of Minnesota; Boatel
Industries; JEK Industries, a Minnesota
corporation; Klapmeier Management, a
Minnesota corporation,
Defendants-Appellants.
Boatel Catamaran, a Minnesota corporation, Defendant.
 Nos. 92-1244, 92-1344 and 92-1811.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Nov. 11, 1992.
Decided May 3, 1993.
 
 Eric J. Magnuson (argued), Richard J. Nygaard and Stephen K. Warch, Minneapolis, MN, appeared on the brief, for appellant.
 Richard T. Ostlund, Minneapolis, MN, argued, for appellee.
 Before McMILLIAN, Circuit Judge, FRIEDMAN,* Senior Circuit Judge, and MORRIS SHEPPARD ARNOLD, Circuit Judge.
 McMILLIAN, Circuit Judge.
 
 
 1
 Appellants James E. Klapmeier, JEK Industries, Inc. (JEK), Boatel Industries, Inc. (Boatel), and Klapmeier Management Co. appeal from a final judgment of the United States District Court for the District of Minnesota[1] awarding appellee John T. Foy $240,000.00 as the fair value of his five percent shareholder interest in JEK and costs, attorney's fees of $146,328.61, and prejudgment interest in the amount of $77,914.60. For reversal, appellants argue the district court erred in (1) failing to apply equitable doctrines to bar Foy's equitable relief, (2) ordering business appraisers, for purposes of determining the value of JEK, to assume Boatel was a division of JEK without considering the cost JEK would have paid to acquire the corporate opportunity, (3) instructing the jury to assume that JEK owned the Inland Cruiser line in determining if Foy's conduct financially harmed JEK, (4) holding Klapmeier personally liable for the value of Foy's shares, and (5) awarding Foy costs and attorney's fees. On cross-appeal Foy argues the district court erred in applying a minority discount in evaluating Foy's shares and in not allowing Foy to participate in a stock dividend paid by JEK in 1987. We modify the judgment of the district court and affirm the judgment as modified. We remand the case to the district court for the limited purpose of calculating additional prejudgment interest.
 
 
 2
 JEK is a closely held Minnesota corporation as defined by Minn.Stat. § 302A.011, and is engaged in the business of manufacturing recreational watercraft. Foy, a citizen of Colorado, was an officer and director of JEK, as well as the registered owner of five percent of JEK stock. Klapmeier, a citizen of Minnesota, was the president and 95% shareholder of JEK, an officer and director of Boatel, and owner of Klapmeier Management Co., which was the parent corporation of JEK, Boatel, and Boatel Catamaran, Inc.[2] All of the businesses were incorporated in Minnesota and each has its principal place of business in Mora, Minnesota.
 
 
 3
 In 1970, Foy was hired as a Boatel sales representative. Klapmeier acquired the Boatel Co. in 1971 after its owner, Telecheck International, filed for bankruptcy. After purchasing the Boatel assets and operations, Klapmeier incorporated JEK and contributed to JEK all of the Boatel assets and operations he had purchased in exchange for 100% of JEK stock and a $306,000 promissory note. After Klapmeier's acquisition of Boatel, Foy continued to work as a sales representative for JEK until 1972 when he purchased five percent of JEK's shares of stock. Foy became Vice President of Sales and Marketing for JEK in 1975 and Director of JEK in 1978.
 
 
 4
 On December 31, 1976, Klapmeier caused JEK to sell the manufacturing facility, consisting of both the land and buildings, to him personally for $275,000. As part of the transaction Klapmeier contracted to lease the property back to JEK under a long-term lease. Klapmeier executed the sale and lease-back transaction without prior disclosure to or approval by Foy as minority shareholder. Klapmeier informed Foy of the sale and lease-back in the summer of 1977.
 
 
 5
 From its incorporation in 1972 until approximately 1976, JEK manufactured and sold two types of boats: traditional steel pontoon houseboats and various styles of fiberglass boats. During 1975 and 1976, Klapmeier sued a former employee who had established a business in direct competition with JEK in violation of an agreement not to compete. The settlement resulted in Klapmeier's acquiring that business which he renamed Boatel Catamaran, Inc. (BCI). Klapmeier was the sole director and president of BCI. After Klapmeier acquired BCI, JEK and BCI entered into a licensing agreement which provided that JEK would manufacture steel pontoon houseboats and BCI would be the exclusive seller of these houseboats. According to Klapmeier, he bought BCI individually because Foy wanted JEK to stay out of the houseboat business and deal exclusively in fiberglass yachts. The net result of this transaction was that JEK transferred its pontoon houseboat product line to BCI, which Klapmeier personally owned and controlled. The district court found this transaction was self-dealing by Klapmeier. Foy v. Klapmeier, No. 3-90 CIV 292, slip op. at 10 (D.Minn. Feb. 21, 1991) (Foy ).
 
 
 6
 Foy contended he never knew JEK's pontoon houseboat product line had been transferred to a separate corporation in which he had no interest. Foy claimed that until August 1984, he thought the creation of BCI was a method of carrying out the agreement he believed he reached with Klapmeier in 1976: the pontoon houseboat business would be treated as a separate division of JEK for accounting purposes so that the two product lines could be monitored separately. Foy admitted that he wanted JEK to concentrate on the sale of fiberglass yachts, but stated he had never consented to releasing his ownership interest in JEK's pontoon houseboat business.
 
 
 7
 The early 1980's were slow years in the recreational boating industry, and Klapmeier began pursuing ways to improve the sales and profitability of his boating business. One of Klapmeier's ideas was to produce and sell a boat initially labeled the "Inland Cruiser."[3] Beginning in early 1982, Klapmeier made the Inland Cruiser project a top priority. He intended to use the skills, materials and know-how available from both JEK and BCI in developing the project. The Inland Cruiser was made using molds from JEK's fiberglass yachts, and JEK employees who built the fiberglass yachts also worked on the Inland Cruiser. Klapmeier decided that the Inland Cruiser product line would be sold through BCI under the same licensing agreement under which pontoon houseboats were being sold. Klapmeier made this decision without seeking Foy's consent or approval.
 
 
 8
 Klapmeier told Foy about the Inland Cruiser project, and also told him that he (Foy) would have no involvement in the design or sale of the Inland Cruiser which would be manufactured by JEK, but sold by BCI. Accordingly, Foy would enjoy none of the profits associated with the sales of the Inland Cruiser. The Inland Cruiser became available for sale in 1983 and was an immediate success, earning $1.5 million in 1983 and approximately $8 million in 1984. Foy terminated his employment with JEK on May 18, 1983, but continued to hold five percent of JEK stock. Shortly after Foy's departure, Klapmeier decided to transfer the sales of the Inland Cruiser product line back to JEK from BCI.
 
 
 9
 In August 1984, Foy and Klapmeier met at a restaurant to attempt to resolve the ongoing ownership and financial dispute between them. Foy informed Klapmeier that he was contemplating litigation against Klapmeier and JEK, and he claimed a right to five percent of both JEK and BCI. Two days after the meeting with Foy, Klapmeier abandoned the previously announced sale of the Inland Cruiser line to JEK from BCI. The district court found that Klapmeier had backdated the minutes of the JEK and BCI board of directors meeting to tie the abandonment of this transaction to a date before the August 1984 meeting with Foy. Foy, slip op. at 19. After rescinding the sale of the Inland Cruiser line to JEK, Klapmeier created a new corporation, Boatel, of which Klapmeier was the sole shareholder, for the purpose of purchasing the Inland Cruiser product line. Klapmeier then transferred all of JEK's assets related to the manufacture of the Inland Cruiser, totaling approximately $2,300,000 of JEK's then existing total assets of $2,900,000, to Boatel at net book value. Klapmeier also transferred all JEK employees to Boatel effective January 1, 1985. Simultaneously, Klapmeier transferred $1,100,000 of assets associated with the sales of the Inland Cruiser line from BCI to Boatel at net book value. None of these transactions was discussed with, disclosed to, or approved by Foy.
 
 
 10
 On June 22, 1987, Foy filed a shareholder derivative action against Klapmeier, BCI, Boatel, JEK, and Klapmeier Management Co. pursuant to Minn.Stat. § 302A.751 in federal district court, alleging breach of fiduciary duty, breach of the duty of loyalty, usurpation of a corporate opportunity, and violation of Foy's appraisal rights dating from July 31, 1986. Jurisdiction was based on diversity of citizenship. 28 U.S.C. § 1332. In addition to monetary damages, Foy sought determination of the fair value of his five percent interest in JEK under Minn.Stat. § 302A.473. On October 2, 1987, JEK filed its own suit against Foy in state court, alleging breach of fiduciary duty, breach of the duty of loyalty as an officer and director of JEK, intentional interference with contractual relations, and unfair competition. JEK also sought a determination of the fair value of Foy's five percent interest in JEK. The parties agreed to an appraisal proceeding and as a result, on October 23, 1990, JEK offered Foy $57,800, the book value of his five percent interest in JEK. After Foy refused to sell his JEK stock,[4] JEK's state suit was removed to federal district court and consolidated with Foy's shareholder derivative action.
 
 
 11
 The parties agreed to try the related claims in a trifurcated action. The first phase was a trial to the court to determine JEK's assets as of July 30, 1986, and to appraise the value of Foy's JEK shares. The district court found that Klapmeier had breached his fiduciary duty to JEK by usurping the corporate opportunity of the Inland Cruiser product line. The district court found Inland Cruiser was developed using JEK employees, materials and know-how and then the sales were transferred by Klapmeier to BCI instead of JEK, and later to Boatel. The district court found these transactions were contrary to the best interests of JEK and ordered that, for appraisal purposes, Boatel should be regarded as a wholly-owned subsidiary or division of JEK. Foy, slip op. at 32.
 
 
 12
 The second phase was a jury trial of JEK's claims against Foy. The jury found that Foy had breached his fiduciary duty and duty of loyalty he owed to JEK as an officer and director, but found that these breaches did not financially damage JEK. Foy, slip op. at 2 (Jan. 8, 1992). Although the district court submitted JEK's punitive damages claim to the jury, the jury never reached the punitive damages issue because it found JEK was not entitled to compensatory damages.
 
 
 13
 The third and final phase was a trial to the court to determine the value of JEK's assets and Foy's claim to imputed dividends based upon allegedly excessive compensation paid to Klapmeier. The district court heard evidence from expert business appraisers regarding the value of the assets owned by JEK, including Boatel, and Foy's claim for imputed dividends based upon allegedly excessive compensation paid to Klapmeier by JEK. The district court determined the fair value of Foy's five percent interest in JEK was $300,000 and then applied a 20% minority discount. After applying the minority discount, the district court found that Foy's shares had a "Marketable Minority Interest Value" of $240,000. The final amount awarded was $184.487.80 ($240,000 offset by $55,512.20 as noted in note 4). Both parties filed post-trial motions which were denied by the district court. The district court also granted Foy's request for costs, attorney's fees in the amount of $146,328.61 and pre-judgment interest in the amount of $77,914.60. These appeals followed.
 
 FAILURE TO APPLY EQUITABLE DOCTRINES
 
 14
 On direct appeal, appellants argue the district court erred in considering Boatel to be a wholly-owned subsidiary of JEK for valuation purposes without applying the equitable doctrines of unclean hands, waiver, and estoppel against Foy. Appellants argue that any of these equitable doctrines would foreclose Foy's recovery because Foy was found to have breached his fiduciary duty and duty of loyalty to JEK. Appellants further argue Foy waived any benefit from Inland Cruiser because he admitted telling Klapmeier he wanted nothing to do with the Inland Cruiser line. Appellants contend that Klapmeier acted in reasonable reliance on Foy's representations by transferring the Inland Cruiser sales to Boatel and also contend that Foy should be estopped from receiving this equitable relief granted by the district court.
 
 
 15
 We find appellants' arguments unpersuasive. We conclude the district court's factual findings were not clearly erroneous. Rogers v. Masem, 788 F.2d 1288, 1292 (8th Cir.1985). The district court found that Klapmeier took the most successful product in his boat-making business, one which according to his own written statements he believed would be an ideal product for JEK to both manufacture and sell, and transferred all of the assets associated with its manufacture and sale to a company of which he was the sole owner, and in which Foy could apparently claim no interest. Foy, slip op. at 21. Equitable proceedings are to be governed by equitable principles. Under Minnesota law, the doctrine of unclean hands will be invoked only to deny equitable relief to a party whose conduct has been unconscionable by reason of a bad motive or where the result induced by that party's conduct will be unconscionable either in the benefit to that party or in the injury to others. See, e.g., Johnson v. Freberg, 178 Minn. 594, 597-98, 228 N.W. 159, 160 (1929). We review a district court's imposition or denial of equitable relief for abuse of discretion. See, e.g., McLaughlin v. Lodge 467, Int'l Bhd. of Boilermakers, etc., 876 F.2d 648, 649 (8th Cir.1989); Tenant Affairs Board v. Pierce, 693 F.2d 797, 798 (8th Cir.1982). We agree that Foy's misconduct was not unconscionable under the circumstances and conclude the district court did not abuse its discretion in fashioning the remedy in this case.
 
 APPRAISAL OF JEK INCLUDING BOATEL
 
 16
 Appellants argue the district court erred as a matter of law in applying the measure of damages for the usurped corporate opportunity without considering the costs necessary to acquire the corporate opportunity. The district court instructed the appraisers to include Boatel as an asset of JEK. Foy, slip op. at 32 (Feb. 21, 1991). Appellants argue it is illogical to assume that an accurate valuation of JEK (and Foy's five percent interest in JEK) can be performed if JEK is deemed to have received a profitable product for free. Appellants argue that such a valuation fails to consider the costs of acquisition and results in a windfall to JEK, and therefore, to Foy.
 
 
 17
 The district court found that Klapmeier had not only usurped a corporate opportunity of JEK by rescinding the sale of the Inland Cruiser, but that he also had breached his fiduciary duty to JEK by stripping JEK of its most productive asset--the manufacture of the Inland Cruiser--and by transferring JEK employees to Boatel through improper and undisclosed transactions. Foy, slip op. at 39 (Feb. 21, 1991). Because of the difficulty in determining the actual loss to JEK as a result of the usurpation of the Inland Cruiser line, the district court granted equitable relief to JEK (and thus indirectly to Foy) pursuant to Minn.Stat. § 302A.467,[5] by considering the Inland Cruiser line as a division of JEK for purposes of valuation. Based on this statute, we affirm the equitable remedy chosen by the district court. Its action is fully consistent with the discretion granted judges under the Minnesota Business Corporation Act. See, e.g., Sawyer v. Curt & Co., Nos. C7-90-2040, C9-90-2041, 1991 WL 65320 (Minn.Ct.App. Feb. 12, 1991) (holding the legislative intent was to expand the court's equitable powers to grant relief to an aggrieved shareholder in a closely held corporation).JURY INSTRUCTIONS
 
 
 18
 Appellants argue the district court erred in instructing the jury to assume the Inland Cruiser line was an asset of JEK in evaluating their damage claims against Foy. Appellants claimed Foy breached his fiduciary duty and duty of loyalty to JEK by interfering with sales of JEK's Bluewater Yachts by disseminating a disparaging letter, "History Of Bluewater." The result of Foy's letter was a drop in JEK's value from $3.5 million to approximately $1 to 1.5 million. Appellants argue the district court's instruction prevented the jury from clearly identifying the damages JEK suffered in the sales of its Bluewater yacht line, because JEK was deemed to have also been selling the Inland Cruiser line as well. Appellants contend that allowing the jury to consider the overwhelming success of the Inland Cruiser in this context was tantamount to a directed verdict against JEK.
 
 
 19
 The jury determined that Foy had violated his fiduciary duty and duty of loyalty, but also found that those actions did not financially harm JEK. Appellants' argument on this issue is based on the district court's finding that Boatel should be considered an asset of JEK for purposes of evaluation. Because we have already held the district court's grant of equitable relief was proper, it was appropriate for the jury to consider the value of the diverted business opportunity in determining the damages, if any, suffered by JEK as a result of Foy's actions. The district court merely grouped all of JEK's corporations together for purposes of evaluation in order to determine JEK's damages.
 
 
 20
 PERSONAL LIABILITY OF KLAPMEIER AND AWARD OF ATTORNEY'S FEES
 
 
 21
 Appellants argue that only a corporation is responsible for payment to a dissenting shareholder; therefore, they contend the district court erred in holding them jointly and severally liable. Appellants specifically argue the district court erred in holding Klapmeier personally liable for the value of Foy's shares. In addition, appellants argue the district court's award of attorney's fees is proper only if a party has acted arbitrarily, vexatiously or not in good faith, which they argue was not found.
 
 
 22
 The basis for Klapmeier's personal liability is clear. Under Minnesota law an officer or director is personally liable for all damages caused by self-dealing in breach of his or her fiduciary obligations. Minn.Stat. §§ 302A.251, .521. Therefore, we hold the district court's imposition of joint and several liability is both legally and factually justified. We also hold the award of attorney's fees and costs to Foy was within the district court's sound discretion, based on its finding of improper conduct by appellants.
 
 APPLICATION OF MINORITY DISCOUNT
 
 23
 On cross-appeal Foy argues the district court erroneously calculated the fair value of his five percent interest in JEK by applying a 20% minority discount to the enterprise value and reducing the value of Foy's shares from $300,000 to $240,000. Based on expert testimony, the district court found the appropriate value of Foy's five percent interest should be reduced by 20% to reflect the "Marketable Minority Interest Value." Foy, slip op. at 18 (Jan. 8, 1992). According to Minn.Stat. § 302A.471, a dissenting shareholder is entitled to receive payment for the "fair value" of his or her shares. "Fair value" is defined as "the value of the shares of the corporation immediately before the effective date" of the corporate change. Minn.Stat. § 302A.473. The valuation procedure under Minn.Stat. §§ 302A.471, .473 was recently clarified in MT Properties, Inc. v. CMC Real Estate Corp., 481 N.W.2d 383, 388 (Minn.Ct.App.1992) (MT Properties ). Unlike the district court, we have the advantage of this recent decision by the Minnesota Court of Appeals which held that a minority discount should not be applied in calculating the fair value of the shares of a dissenting shareholder under Minn.Stat. § 302A.471. Id.
 
 
 24
 Appellants argue MT Properties is not binding on this court because a federal court with diversity jurisdiction is bound only by state law as determined by the highest state court. We agree with that general proposition, but its application does not change the outcome of this case. We review determinations of state law de novo. Salve Regina College v. Russell, 499 U.S. 225, ---, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991). Although the Minnesota Supreme Court has not addressed this issue, the Minnesota Court of Appeals has. We believe that the Minnesota Supreme Court would adopt the holding of the Minnesota Court of Appeals and prohibit minority discounts in this situation. The result of MT Properties is in accordance with the approach of the majority of states which have addressed this issue. MT Properties, 481 N.W.2d at 387. For these reasons we hold the district court erred in applying a minority discount in determining the fair value of Foy's shares. The fair value of Foy's five percent interest in JEK is $300,000.
 
 PARTICIPATION IN STOCK DIVIDEND
 
 25
 Foy also argues the district court incorrectly found that he was not entitled to receive a proportionate share of the $261,910 Klapmeier received as a JEK stock dividend from August 1986 to July 1987. The district court denied Foy a proportionate share because Foy had exercised his dissenter's rights before that time period. Pursuant to Minn.Stat. § 302A.473(4)(b), a "dissenter retains all other rights of a shareholder until the proposed action takes effect." Under this section, when a shareholder dissents from a corporate action, he or she retains shareholder rights only until the corporate action dissented from takes place. We agree with the district court that it would be incongruous to give Foy the benefit of being a stockholder through 1987 when under state law he is treated as if he had sold the stock on July 31, 1986 for appraisal purposes. Foy, slip op. at 10 (Jan. 8, 1992). Foy's shareholder derivative action, although commenced in 1987, contested JEK's actions after July 31, 1986, which is the period when Klapmeier received this dividend. Therefore, we agree with the district court that Foy is not entitled to a proportionate share of the dividend.
 
 CONCLUSION
 
 26
 Accordingly, we modify the district court judgment to award Foy a total of $244,487.80 ($300,000 less the offset of $55,512.20) plus prejudgment interest, as the fair value of his five percent interest in JEK and affirm the judgment as modified. We remand this case to the district court for the limited purpose of calculating additional prejudgment interest.
 
 
 
 *
 The Honorable Daniel M. Friedman, Senior United States Circuit Judge for the Federal Circuit, sitting by designation
 
 
 [1]
 The Honorable Donald D. Alsop, Senior United States District Judge for the District of Minnesota
 
 
 [2]
 Boatel Catamaran, Inc. was a defendant in the district court proceedings; however, it is not a party to this appeal
 
 
 [3]
 This product line was sold as "Boatel Inland Cruiser" and later marketed using the name "Bluewater Coastal Cruiser." For purposes of this opinion it will be referred to as "Inland Cruiser."
 
 
 [4]
 Foy accepted $57,800 from JEK as an estimate of the fair value of his shares. The district court gave credit to JEK for $55,512.20 paid to Foy ($57,800.00 minus $2,287.80 which were improper offsets) when it set the final net principal amount owed to Foy for the fair value of his five percent interest in JEK as $184,487.80. Foy v. Klapmeier, No. 3-90 CIV 292, slip op. at 19 (D.Minn. Jan. 8, 1992)
 
 
 [5]
 Minn.Stat. § 302A.467 authorizes a trial court to "grant any equitable relief it deems just and appropriate and award expenses, including attorney's fees and disbursements, to the shareholder."