# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 02-1342/1466

_____

| | |
|---|---|
| Metro Motors, doing business as Luther Nissan, LLC, | * * * |
| Appellee/Cross-Appellant, | * * |
| v. | * |
| Nissan Motor Corporation in U.S.A., | * Appeals from the United States * District Court for the * District of Minnesota. |
| Appellant/Cross-Appellee. | * * |
| _____ | * |
| Minnesota Automobile Dealers Association, | * * * |
| Amicus on Behalf of Cross-Appellant. | * * |

_____

Submitted: February 14, 2003

Filed: August 12, 2003

_____

Before HANSEN,[1] Chief Judge, RICHARD S. ARNOLD, and BYE, Circuit Judges.

_____

_____

[1]The Honorable David R. Hansen stepped down as Chief Judge of the United States Court of Appeals for the Eighth Circuit at the close of business on March 31, 2003. He has been succeeded by the Honorable James B. Loken.

BYE, Circuit Judge.

This is a dispute between a car dealership and a car manufacturer over the latter's attempt to enforce an exclusivity provision in the parties' contract, notwithstanding the disfavor such provisions have under Minnesota's Motor Vehicle Sale and Distribution Regulations (the Act), Minn. Stat. §§ 80E.01 - 80E.18. Nissan Motor Corporation, the manufacturer, appeals the district court's[2] refusal to order specific performance of the exclusivity provision. Metro Motors, the dealer, cross-appeals the district court's refusal to hold exclusivity provisions unenforceable as a matter of law in Minnesota, and the denial of Metro's request for attorney fees. We affirm.

I

In 1996, Metro signed a contract with Nissan to sell Nissan vehicles at a dealership in Inver Grove Heights, Minnesota. The agreement contained an exclusivity provision which prohibited Metro from "conduct[ing] any dealership operations for any other make or line of new or unused vehicles from the Dealership Facilities." In 1998, Metro breached the exclusivity provision and began servicing and selling new Kia vehicles at its Inver Grove Heights location. In 2000, Nissan tried to persuade Metro to stop selling Kia cars. Nissan asked Metro to sign an amendment to the original contract which would have provided that Metro's failure to sell only Nissan vehicles at the Inver Grove Heights location would constitute good cause for termination of the agreement.

Shortly thereafter, Metro brought this lawsuit claiming Nissan's conduct violated two provisions of the Act. The first provision makes it unlawful to require a dealer to "enter into any agreement with the manufacturer or to do any other act

_____

[2]The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota.

-2-

prejudicial to the new motor vehicle dealer by threatening to cancel a franchise or any contractual agreement existing between the dealer and the manufacturer." Minn. Stat. § 80E.12(e). The second prohibits a manufacturer from "during the franchise term, us[ing] any written instrument, agreement, or waiver, to attempt to nullify or modify any provision of this chapter." Minn. Stat. § 80E.135. Metro claimed Nissan's proposed amendment attempted to nullify that provision of the Act which provides "[t]he fact that the new motor vehicle dealer . . . has established another make or line of new motor vehicle in the same dealership facilities as those of the manufacturer [does not] constitute good cause for the termination, cancellation, or nonrenewal of a franchise." Minn. Stat. § 80E.07, subd. 1(c).

Metro asked the district court to find Nissan in violation of the Act, to declare exclusivity provisions unenforceable in Minnesota, and to award attorney fees under section 80E.17 of the Act. Nissan counterclaimed asking the district court to declare that Metro breached the contract by selling Kia vehicles at the Inver Grove Heights location, and requesting specific performance (i.e., a court order requiring Metro to stop selling Kia vehicles).

On Metro's claims, the district court found Nissan in violation of the Act but refused to declare exclusivity provisions unenforceable in Minnesota. The district court also refused to award Metro attorney fees because Metro knowingly breached the contract's exclusivity provision. On Nissan's counterclaims, the district court declared Metro breached the contract, but refused to order Metro to stop selling Kia vehicles. The district court determined Nissan was not entitled to the equitable remedy of specific performance because Nissan had control over the terms of the franchise agreement and gave itself no effective means of enforcing the agreement's exclusivity provision.

Nissan appealed contending the district court misinterpreted the Act and abused its discretion by denying specific performance. Metro cross-appealed

-3-

contending the district court should have declared exclusivity provisions unenforceable as a matter of law. Metro also contends the district court should have awarded it attorney fees based on Nissan's violation of the Act.

II

We first address Nissan's appeal and its claim the district court misinterpreted the Act in denying Nissan's request for specific performance. We review de novo the district court's interpretation of the Act, Walk v. Starkey Mach., Inc., 180 F.3d 937, 939 (8th Cir. 1999), but review for abuse of discretion the district court's refusal to grant Nissan the equitable remedy of specific performance. Walser v. Toyota Motor Sales, U.S.A, Inc., 43 F.3d 396, 403 (8th Cir. 1994). Specifically, Nissan contends the district court denied specific performance based on a flawed interpretation of Minn. Stat. § 80E.07, subd. 1(c). Nissan claims the district court interpreted that section of the Act as foreclosing, as a matter of law, the equitable remedy of specific performance for the breach of an exclusivity provision. We disagree.

In its treatment of Nissan's request for specific performance, the district court expressly rejected Metro's argument that § 80E.07 foreclosed the equitable remedy of specific performance as a matter of law. The district court held § 80E.07 subd. 1(c) "does not prohibit exclusivity terms in franchise agreements, it merely provides that the breach of such terms is not *by itself* good cause for termination of a franchise." Metro Motors, LLC v. Nissan Motor Corp., No. Civ. 00-2120, 2001 WL 1690060, at *3 (D. Minn. Dec. 27, 2001) (emphasis in original). The district court then noted the Act strongly disfavors exclusivity provisions and makes them difficult to enforce. Id. Those are all correct observations.

The district court's next step unequivocally belies Nissan's contention the district court erroneously believed specific performance was foreclosed as a matter of law. Citing Dakota County HRA v. Blackwell, 602 N.W.2d 243, 344 (Minn.

-4-

1999), the district court recognized its obligation to balance the equities present in this case to determine if specific performance was appropriate, and went on to balance those equities. Metro Motors, 2001 WL 1690060 at *3. If the district court had believed the Act foreclosed specific performance as a matter of law, it would not have balanced the equities of the case. The district court clearly understood it had discretion to order specific performance, and appropriately balanced the equities in deciding whether to award an equitable remedy.

We conclude the district court was within its discretion in refusing to grant Nissan an equitable remedy. In balancing the equities, the district court emphasized Nissan's control, as the drafter, over the terms of the franchise agreement. The district court noted Nissan could have included in the agreement an effective means of enforcing the exclusivity provision, such as a "liquidated damages [clause] or some other legally permissible penalty for the breach of such provision." Id. The district court concluded "Nissan could have ensured that its Minnesota franchisees had an incentive to comply with the exclusivity provision in Nissan's franchise agreement. Its failure to do so does not give rise to the equitable remedy of specific performance." Id.

Thus, the district court refused to help Nissan because Nissan could have helped itself and did not. We find no abuse of discretion in the district court's refusal to assist a party who neglected to protect its own interests. "Courts, like the Deity, are most frequently moved to help those who help themselves." Paterson-Leitch Co., Inc. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985, 989 (1st Cir. 1988); see also Dam v. Gen. Elec. Co., 144 F.Supp. 175, 181 (E.D. Wash. 1956) ("Ordinarily, equity puts out its assisting arm only to those who have shown a disposition to help themselves.") (quoting Teeter v. Brown, 228 P. 291, 292 (Wash. 1924)) .

In addition, as Metro argues on appeal, when Nissan asked for the court's equitable assistance in enforcing the exclusivity provision, Nissan had already

violated the Act by asking Metro to sign an amendment which would allow Nissan to terminate the franchise. Thus, Metro argues Nissan came to court with unclean hands. Although the district court did not rely upon Nissan's violation of the Act as a ground for denying equitable relief, we may affirm based on any ground supported by the record, Ballinger v. Culotta, 322 F.3d 546, 548 (8th Cir. 2003), and agree Nissan's violation of the Act supports the district court's refusal to award specific performance.

Well-accepted general principles of equity support Metro's contention that a statutory violation gives a party unclean hands. See Smith v. World Ins. Co., 38 F.3d 1456, 1463 n.2 (8th Cir. 1994) ("[E]quity, under the general maxim that one who seeks equity must come with clean hands, will refuse its aid to a litigant who violates a statute directly connected with the matter in litigation.") (quoting Ohler v. Ohler, 369 N.W.2d 615, 618 (Neb. 1985)); see also Guardian Title Agency, LLC v. Matrix Capital Bank, 141 F. Supp. 2d 1277, 1282 (D. Colo. 2001) (refusing equitable relief to a party who committed deceptive trade practices in violation of Colorado law); Northeast Women's Ctr., Inc. v. McMonagle, 665 F.Supp. 1147, 1158 (E.D. Pa. 1987) (holding "relief at equity is precluded" for party in violation of Pennsylvania law); Castle Homes & Dev., Inc. v. City of Brier, 882 P.2d 1172, 1179 (Wash. Ct. App. 1994) (holding party could not assert equitable defense where it had violated state statute); El Paso Nat'l Bank v. Southwest Numismatic Inv. Group, Ltd., 548 S.W.2d 942, 949 (Tex. Civ. App. 1977) ("[O]ne who acts in violation [of statute] does not have clean hands.").

Nissan counters that "[u]nder Minnesota law, the doctrine of unclean hands will be invoked only to deny equitable relief to a party whose conduct has been unconscionable by reason of a bad motive or where the result induced by that party's conduct will be unconscionable either in the benefit to that party or in the injury to others." Foy v. Klapmeier, 992 F.2d 774, 779 (8th Cir. 1993) (citing Johnson v. Freberg, 228 N.W. 159, 160 (Minn. 1929)). Nissan contends it did not have a bad

motive for violating the Act, and its conduct did not benefit it or injure Metro. We disagree.

As the district court noted, Metro Motors, 2001 WL 1690060 at *2, Metro suffered a constitutional injury-in-fact for standing purposes due to Nissan's conduct because the Act allows a "person injured because of the refusal to accede to a proposal for an arrangement which, if consummated, would be in violation of [the Act to] bring a civil action to enjoin further violations." Minn. Stat. § 80E.17. We agree Nissan's conduct in violating the Act was sufficient injury to Metro for standing purposes. See Fed. Election Comm'n v. Akins, 524 U.S. 11, 22 (1998) (recognizing injury based on violation of statute intended "to protect individuals such as respondents from the kind of harm they say they have suffered" and allowing suit to be brought based on statutory violation). Because the violation of a statute directly connected with the matter in litigation generally triggers the doctrine of unclean hands, we believe Metro's injury was also sufficient to bar equitable relief under Minnesota law.

Moreover, Nissan's violation of the Act was purposeful, and Nissan clearly intended to benefit from its attempt to amend the agreement (i.e., by terminating Metro's franchise). Nissan contends it did not actually benefit from its violation of the Act because Metro rebuffed its request and continues to sell Kia vehicles at the dealership. We reject this reasoning. Minnesota law applies the doctrine of unclean hands when the result induced by a party's conduct "will be," Foy, 992 F.2d at 779, not "was," unconscionable in the benefit to that party. Nissan clearly would have benefitted from its violation of the Act but for Metro's filing of this suit and refusal to accede to Nissan's proposal.

Next, we address the two issues raised on Metro's cross-appeal, that is, the district court's refusal to declare exclusivity provisions unenforceable per se under Minnesota law, and its refusal to award Metro attorney fees. We again review the

district court's interpretation of the Act de novo, and review for abuse of discretion the district court's refusal to award attorney fees. Cf. Hutchinson Utils. Comm'n of City of Hutchinson v. Curtiss-Wright Corp., 775 F.2d 231, 243 (8th Cir. 1985) (applying abuse of discretion standard after doubting whether "the Minnesota state courts would read a statute which merely authorizes attorneys' fees awards as making the awarding of attorneys' fees mandatory on the trial court").

Metro contends the Act does more than prohibit manufacturers from terminating a franchise for violating an exclusivity provision. Metro contends the Act actually makes all exclusivity provisions unenforceable as a matter of law. We disagree. The Act lists several distinct "unlawful acts" under Minn. Stat. § 80E.12(a)-(j) and several more distinct "unfair practices" under Minn. Stat.§ 80E.13(a)-(n). Requiring a dealer to agree to an exclusivity provision is not proscribed either as an unlawful act or an unfair practice.

There is a parallel structure between Minn. Stat. §§ 80E.07 subd. 1(c) and 80E.12(h) which we find dispositive. The first provision prohibits a manufacturer from terminating a dealer solely for owning or managing another line of vehicles, and also prohibits a manufacturer from terminating a dealer solely for establishing another line "in the same dealership facilities." Minn. Stat. § 80E.07 subd. 1(c). In contrast, the latter provision makes it unlawful to require a dealer to refrain from owning or managing another line of vehicles, but does not make it unlawful to require a dealer to refrain from establishing another line in the same dealership facilities. Minn. Stat. § 80E.12(h). Thus, it is apparent the Minnesota legislature purposely adopted a "middle ground" approach, so to speak. Manufacturers may use exclusivity provisions (and by this we mean provisions which relate to selling another line in the same dealership facilities) but cannot terminate a dealer for breaching such a provision, and therefore must resort to other remedies if they wish to enforce such a provision.

Finally, we find no abuse of discretion in the district court's denial of attorney fees. Metro agreed to a dealership agreement that contained an exclusivity provision, and we have rejected Metro's claim Minnesota law completely prohibits the use of such provisions. The district court refused to award attorney fees because Metro was "in knowing and blatant breach of its contract with Nissan." Metro Motors, 2001 WL 16900060, at *4. We cannot conclude the district court abused its discretion under these circumstances.

We affirm the district court in all respects.

HANSEN, Circuit Judge, concurring in part and dissenting in part.

I respectfully dissent from that portion of the court's opinion wherein it affirms the district court's denial of Nissan's request for specific performance. I readily concur in the balance of the court's opinion.

The court concludes that "the district court recognized its obligation to balance the equities present in this case . . . and appropriately balanced the equities in deciding whether to award an equitable remedy." (Supra at 5.) The opinion does not recite any actual balancing performed by the district court, however, because the district court did not balance anything. Rather, the district court considered Minnesota's disfavor of exclusivity clauses in general and the fact that Nissan, as the drafter of the contract, could have provided a remedy other than termination but chose not to do so. The district court did not consider, let alone balance, any of the factors that courts look to in addressing a request for specific performance, an inquiry that should consider all of the facts of the particular case. See, e.g., Landmark Holding Co. v. WLW Real Estate, L.L.P. (In re Landmark Holding Co.), 286 B.R. 377, 385 (Bankr. D. Minn. 2002) (citing Johnson v. Johnson, 137 N.W.2d 840, 847 (Minn. 1965) and considering the following five factors in assessing whether to order specific performance: 1) a clear contract; 2) made for adequate consideration with fair

and reasonable terms; 3) induced without sharp tactics, mistake, or misrepresentation; 4) enforcement of which does not produce disproportionate hardship; and 5) for which the beneficiary cannot be properly compensated in damages).

The two factors upon which the district court relied do not support its conclusion. Minnesota's general dislike of exclusivity clauses does not militate against granting specific performance in this case because, as this court finds, ante at 8, the Minnesota statute does not prohibit the use of exclusive facility clauses. The statute only prevents a party from terminating a dealership agreement on the basis that the dealer has established another line in the same facility. Minn. Stat. § 80E.07, subd. 1(c). By requesting that Metro be required to specifically perform the contract it agreed to, Nissan is not seeking to terminate the agreement. Rather, Nissan is seeking to continue it according to its agreed upon terms. See, e.g., Summit House Co. v. Gershman, 502 N.W.2d 422, 424 (Minn. Ct. App. 1993) ("By pursuing specific performance to a determinative conclusion, the [plaintiffs] chose not to cancel the contract, but to affirm it."). Because the Minnesota legislature chose to allow exclusive facility clauses, but limited the remedy for breach of such a clause by preventing a manufacturer from terminating a dealership agreement solely on the basis of that breach, one can logically and legitimately argue that Minnesota favors enforcing such clauses by any means other than terminating the dealership, including specific performance of the clause.

The district court also vaguely discussed the fact that Nissan drafted the contract. Although equity will not help those who do not help themselves, that maxim does not readily apply to this situation, where the drafting party's only failure was not specifying a remedy for a breach. To deny specific performance to the party drafting a clear, fair agreement because that party failed to specify an adequate legal remedy seems contrary to the very purpose of the equitable remedy of specific performance. Specific performance is only available where a party does not have an adequate remedy at law. It seems to me quite circular to then deny specific

-10-

performance on the basis that the party failed to draft an adequate legal remedy. I suggest that equitable jurisprudence would look much different if drafting inadequacies alone rendered a party ineligible for such a remedy.

As I see it, the more appropriate maxim to apply between these two merchants of automobiles is: a deal is a deal. The Franchise Agreement, in a separate addendum entitled "Exclusivity Provisions," very clearly provided:

> The only line-make of new, unused motor vehicles which Dealer shall display and sell at the Dealership Facilities shall be the Nissan line and make of motor vehicles. Dealer shall not conduct any dealership operations for any other make or line of new or unused vehicles from the Dealership Facilities.

(Add. at 71.) Metro is owned by the Luther family, which, in one form or another, owns more than twenty separate dealerships. (J.A. at 159, 187.) Although Nissan drafted the agreement, both parties were and are sophisticated. Metro very clearly agreed not to sell other lines of new vehicles from the Dealership Facility. Yet, just over a year after entering the Franchise Agreement, Metro began negotiations with Kia to sell new Kia vehicles from the Nissan Dealership Facility. Upon learning of the negotiations, Nissan informed Metro twice, in writing, that Metro would be violating the Franchise Agreement if it entered into its proposed agreement with Kia. Metro did not try to come to an agreement with Nissan or to seek a judgment declaring the exclusive facility clause unenforceable as violative of Minnesota law. Instead, Metro went full speed ahead with the Kia deal and, to the court's most recent knowledge, is selling new, unused Kia vehicles from the Nissan facility to this day. A deal is a deal, and Metro should be held to its deal with Nissan.

As for Metro's argument that Nissan should be precluded from seeking the equitable remedy of specific performance because Nissan's hands are soiled by its violation of sections 80E.12(e) & 80E.135, I find the argument to be a case of "the

-11-

pot calling the kettle black."  Metro blatantly and openly breached the contract it made with Nissan, a fact not ignored by the district court.  (Order at 6 ("Metro does not oppose Nissan's request for a declaratory judgment, presumably because it is clear that Metro is in breach of the exclusivity provision of the Franchise Agreement.").) Only after Metro rejected all of Nissan's attempts to work out a solution did Nissan ask Metro to agree to an amendment that would allow Nissan to terminate the dealership if Metro continued to violate the exclusive facility clause.  For Metro to argue now that Nissan had unclean hands because it violated the state statute seems, at a minimum, disingenuous, coming as it does from the one who committed the first legal wrong.  It is, after all, only Metro itself who stands in breach of the contract.

Looking at the unique aspects of the case, the equities clearly weigh in favor of Nissan.  Nissan entered into an unambiguous contract with Metro.  There are no allegations that the contract clause was the result of overreaching or that it is otherwise unfair or unjust.  Further, by contract and by statute, Nissan cannot terminate the franchise unless Metro materially breaches some other clause that the Minnesota statute does not address as an inappropriate basis for termination.  The contract's exclusive facility clause is clearly legal under Minnesota law, and it is clearly material to Nissan, who continues to be damaged by Metro's ongoing breach of the agreement.  Specific performance would disadvantage Metro only in the sense that it would require Metro to live up to the bargain it made, or its owners would have to sell Kias out of one of their other numerous locations not encumbered by valid agreed upon restrictions.  At a minimum, I would remand the case to the district court to consider the proper factors, beyond the facts that the Minnesota legislature disfavors exclusivity clauses in general and that Nissan drafted the agreement without providing a liquidated damages remedy.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.